924 A.2d 1112

**Ronald BOYD a/k/a Randall Boyd**

v.

**STATE of Maryland.**

**No. 30, Sept. Term, 2006.**

Court of Appeals of Maryland.

June 7, 2007.

458

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forester, Public Defender, Baltimore), on brief for Petitioner.

Shannon E. Avery, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, Baltimore), on brief for Respondent.

Argued before BELL, C.J., RAKER, *WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

Petitioner Ronald Boyd was convicted by a jury, in the Circuit Court for Baltimore City, of violating a protective order obtained by his daughter's mother. In this Court, the petitioner argues that the Circuit Court erred in admitting hearsay evidence and that the Court of Special Appeals erred when it held that general objections during trial did not

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

preserve the hearsay issue for appeal. Mr. Boyd also maintains that the intermediate appellate court erroneously affirmed the trial court's admission of evidence of Mr. Boyd's alleged prior bad conduct. The respondent, the State of Maryland, argues that, "to the extent" that the hearsay issue was "preserved" for appeal, the Circuit Court's rulings admitting the challenged evidence were correct. We shall reverse the Court of Special Appeals, hold that the hearsay issue was preserved, and hold that the admission into evidence of hearsay and of other "bad acts" was erroneous.

I.

Ronald Boyd and Cathleen Weaver are the parents of Lyric Weaver–Boyd who was born on May 7, 2003. Mr. Boyd and Ms. Weaver had not expressly agreed upon custody or a visitation schedule after Lyric's birth, and Lyric lived with Ms. Weaver. Until February 2004, Mr. Boyd visited his daughter whenever he wanted. On February 17, 2004, Mr. Boyd attempted to visit his daughter, and Ms. Weaver refused to permit the visit because Lyric was sleeping. This led to an argument between the two, with Mr. Boyd allegedly threatening Ms. Weaver. The next day, February 18, 2004, Mr. Boyd came to Ms. Weaver's place of employment and allegedly threatened her. On February 19, 2004, Ms. Weaver filed a petition in the District Court of Maryland for a protective order, and an interim protective order was issued on that date. The protective order was based on the February 17th and February 18th incidents.

On February 23, 2004, with Mr. Boyd's consent, a final protective order was entered by the District Court. The final protective order in pertinent part provided as follows:

"After the appearance of the PETITIONER [WEAVER], RESPONDENT [BOYD], and in consideration of the petition and evidence, the Court makes the following findings:

A. That CATHLEEN WEAVER, who is a Person(s) Eligible for Relief, is:

An individual who has a child in common with the Respondent. DAUGHTER

B. That the Respondent consents to the entry of a Protective Order.

Based on the foregoing findings, the Court hereby ORDERS:

1. That, unless otherwise stated below, this Order is effective until 12/01/2004.

2. That the Respondent SHALL NOT abuse, threaten to abuse, and/or harass THE PETITIONER.

3. That Respondent SHALL NOT contact, (in person, by telephone, in writing, or by any other means) and/or attempt to contact THE PETITIONER.

4. That the Respondent SHALL NOT enter the Residence of CATHLEEN WEAVER at 3219 AVON AVE, BALTIMORE MD 21218.

 (Residence includes yard, grounds, outbuildings, and common areas surrounding the dwelling.)

5. That the Respondent SHALL STAY AWAY from

 The following child care provider(s):

 1020 UPNOR RD 21215 AND 5926 FENWICK AVE 21215

 The following place(s) of employment:

 ANDY NAILS AT 2226 E MONUMENT ST, BALTO MD 00000

 The home of another family member at 356 E BELVEDERE AVE 21218

6. That the Custody of LYRIC BOYD is awarded to THE PETITIONER.

7. That visitation is granted to THE RESPONDENT.

* * *

"The child(ren) shall be delivered and picked up for visitation and returned afterwards as follows:

CONTACT BARBARA FOWLKES—MOTHER OF PET. VISITATION HOURS SUNDAY AND MONDAY."

Pursuant to Mr. Boyd's request, the District Court on April 14, 2004, modified the final protective order to provide specific hours for visitation. The modified final protective order specified visitation hours for Mr. Boyd every Sunday from 9:00 A.M. to 9:00 P.M. and every other Monday from 9:00 A.M. to 9:00 P.M.

Until July 11, 2004, Mr. Boyd's visitation with his daughter, pursuant to the modified order, took place without any problems. On Sunday, July 11, 2004, however, another argument occurred. As scheduled according to the visitation arrangements in the modified protective order, Mr. Boyd on July 11th picked up Lyric from the home of Ms. Weaver's mother, Barbara Fowlkes. He returned her that evening 50 minutes late. Upon returning his daughter, Mr. Boyd and Ms. Fowlkes engaged in an argument. Mr. Boyd attempted to leave with Lyric, but several neighbors and a police officer prevented him from doing so.

On the following Sunday, July 18, 2004, Ms. Weaver decided not to permit visitation, although she failed to inform Mr. Boyd of this decision. Ms. Weaver instead decided to take Lyric to Artscape, a cultural arts festival in Baltimore City. Mr. Boyd, along with his friend Pam Wilson, went to Ms. Fowlkes's home to pick up Lyric for his scheduled visitation, but no one answered the door. He subsequently telephoned Ms. Fowlkes twice, but she hung up on him each time. Shortly thereafter, Mr. Boyd arrived at Ms. Fowlkes's home with two police officers. Ms. Fowlkes informed the police officers and Mr. Boyd that neither Ms. Weaver nor Lyric was there. The officers and Mr. Boyd left.

Ms. Weaver testified that, on her way to Artscape, she saw Mr. Boyd riding in a truck driven by Pam Wilson. Both the truck and Ms. Weaver were stopped at the same traffic light, although they were headed in different directions. Later, as Ms. Weaver continued on her route, she testified that the truck was following her, a few vehicles behind her. According

to Ms. Weaver's testimony, she continued for several more blocks, eventually using her cell phone to call the police because the truck was still following her. The police instructed Ms. Weaver to stop driving so that a police car could catch up with her. Ms. Weaver parked her car on McMeeken Street; the truck turned before reaching her and continued on another street.

A police car pulled alongside Ms. Weaver, and an officer told Ms. Weaver that he would follow her to a parking place for Artscape and then accompany her to Artscape. Once she found a parking place, Ms. Weaver put Lyric in her stroller and started walking toward the police car. As she was walking, Ms. Weaver noticed the truck drive past the police car, and the police officer also noticed the truck. Ms. Wilson, who was driving the truck, testified that Mr. Boyd "was upset because his daughter has chronic asthma and she had [his] daughter out in the pouring down rain." Ms. Wilson parked the truck nearby, and Mr. Boyd "went over to the police officer with his visitation papers that he had gotten from the court." The police officer told Mr. Boyd to wait in the truck, and Mr. Boyd then returned to the truck. The officer "ran him for a warrant check," and thereafter arrested Mr. Boyd on an unrelated, open warrant. At no time on July 18th did Mr. Boyd approach or talk to Ms. Weaver. The State later charged Mr. Boyd with violating the February 23, 2004, final protective order. The charge was based entirely upon the events on July 18, 2004.

Before trial, the State filed a motion *in limine* seeking a ruling on the admissibility of evidence, including Ms. Weaver's petition for the protective order, testimony concerning the February incidents, and testimony relating to the July 11, 2004, incident. At the pretrial hearing on the motion, the State argued that the petition itself, and testimony about the incidents, were relevant to understand why Ms. Weaver sought protection from Mr. Boyd. According to the State, the information in the petition for a protective order and the proposed testimony required a "prior bad acts analysis." The pertinent Maryland Rule of Evidence states:

**"Rule 5–404. Character evidence not admissible to prove conduct; exceptions; other crimes.**

\* \* \*

**"(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

The State asserted that the petition for a protective order and evidence regarding the February incidents fell under the special relevance exception of "absence of mistake."

The defense, at the hearing on the motion *in limine*, agreed that the protective order itself was admissible, but argued against the admissibility of the petition and other evidence concerning the February incidents, asserting that the evidence did not fall under any Rule 5–404(b) exception. Mr. Boyd's attorney argued that

"the nature of the acts that are alleged by Ms. Weaver that support her seeking protection are again, Your Honor, prior bad acts. And unless that—they don't seem to be relevant to the case and they seem greatly prejudicial to Mr. Boyd and not relevant—not probative—not helpful to the jury in deciding whether Mr. Boyd violated the final protective order which we concede was in place on February 23rd."

At the pretrial hearing, with regard to the incident on July 11, 2004, the State argued that testimony about the event should be admissible because it showed harassment by Mr. Boyd and showed Ms. Weaver's state of mind. In addition, the State maintained that such evidence "goes to [Mr. Boyd's] absence of mistake again because just a week prior he knew that there were problems." The defense responded that admission of testimony regarding the July 11, 2004, incident would result in a "mini trial."

The Circuit Court, during the pretrial hearing, heard testimony from Ms. Weaver about the incidents on February 17th

and 18th so that it could assess whether, by clear and convincing evidence, the events described in the petition for a protective order took place. Thereafter, the court granted the motion *in limine*, ruling in favor of the State on the admissibility of the petition for the protective order, testimony about the February incidents described therein, and testimony concerning the July 11th incident. As to the petition and testimony about the February incidents, the Circuit Court stated:

"I do find having listened to Ms. Weaver's testimony that the State has proven by clear and convincing evidence that the conduct occurred. Further, I believe that the probative value of the evidence outweighs any potential prejudice. So, I'm going to admit that evidence."

The court did not specify what category of admissibility, listed in Rule 5–404(b), encompassed the evidence about the February incidents.

In explaining its ruling with respect to the July 11th incident, the court said:

"I don't think it's another bad act on Mr. Boyd's part. So I don't think it needs to be analyzed under 5–404. I think it has minimal probative value.

"However, after thinking about it, it could tend to prove or disprove facts that could be relevant in this case. I don't think it shows any intent to harass on his part or bears on the harassment. However, my understanding is that by the proffer the State's evidence in this case is going to be that Mr. Boyd and Ms. Wilson followed Ms. Weaver on July 18th which was a visitation day.

"And I further understand from what the parties told me ... that Ms. Weaver had because of this incident refused to give Mr. Boyd visitation on that day. I think it may be important to the context to hear that.

"When I say it's potentially prejudicial I think it's potentially prejudicial, but I don't think it's prejudicial in the sense it's going to make the jury find Mr. Boyd guilty of harassment on July 18th. I think it's potentially prejudicial because I don't particularly want to spend time trying what

happened at this fracas on July the 11th and I don't want to divert the jury's attention.

"However, finding no prejudice in the sense that I think it would tend to make the jury convict Mr. Boyd of harassment on the 18th, I am going to permit some evidence of it. I don't know what Mr. Boyd's evidence is going to be, but it seems to me both parties may get into what happened before in terms of why . . . what happened on the 18th happened on the 18th.

"And I think it's going to be very difficult to have evidence of what happened on the 18th without any evidence as to what happened on the 11th. So, I'm not going to exclude that evidence."

At trial, defense counsel repeatedly objected to the introduction of the evidence ruled on by the Circuit Court at the pretrial hearing on the motion *in limine*. During Ms. Fowlkes's testimony, the following occurred:

"[DEFENSE COUNSEL]: Your Honor, I just need to make a record. I'm objecting to all these references to July 11th. All the testimony. I don't want to keep objecting every time you ask her a question.

"THE COURT: What do you mean by all the testimony?

\* \* \*

"[DEFENSE COUNSEL]: I'm trying to enter a standing objection to any testimony that's elicited about the July 11th incident.

"THE COURT: Okay. Well, in accordance with my prior ruling—

"[DEFENSE COUNSEL]: I understand. I'm just making a record."

At the beginning of Ms. Weaver's testimony regarding the February 2004 incidents, the following occurred:

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

**468**

\* \* \*

"[DEFENSE COUNSEL]: Your honor, I'm going to object. May we approach the bench please?

"THE COURT: Is this based on the pre-trial—

"[DEFENSE COUNSEL]: Yes, Your Honor, but I just need to make a record at the bench please.

"THE COURT: Well, I think you made it.

\* \* \*

(Counsel approached the bench and the following ensued:)

"[DEFENSE COUNSEL]: Your Honor, I'm sorry. I don't—it's just that this is another different incident that's coming in so I'm going to make a standing objection to all.

"THE COURT: This is the—

"[DEFENSE COUNSEL]: This is the February incident.

"THE COURT: February ... ?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: The subject of the protective order. Right.

"[DEFENSE COUNSEL]: Right. And I'm just—I'm—

"THE COURT: Well, I understood that. I don't think you need to say anything more.

"[DEFENSE COUNSEL]: Well, I need to protect the record, Your Honor. Our appellate lawyers say that if we don't make a standing objection—you would think that the ruling on the motion in limine would be sufficient, but—

"THE COURT: No, no, no. I know you need to make an objection during trial. You're correct. But I think if you make the objection from the bench you don't need to put the grounds on the record all over again. That's all I was saying.

"[DEFENSE COUNSEL]: Thank you, Your Honor, It's just—

"THE COURT: So you could have made it from the table. That's all I was saying.

"[DEFENSE COUNSEL]:—a standing objection. Thank you.

"THE COURT: All right."

Later, during testimony regarding the petition for a protective order, defense counsel objected: "Your Honor, again, just for the record we're objecting." Prior to the admission into evidence of the petition for the protective order, defense counsel objected as follows:

"[DEFENSE COUNSEL]: Your Honor, again, I would just make an objection for the record based upon—

"THE COURT: The same objection.

"[DEFENSE COUNSEL]: The same objection. Yes, Your Honor.

"THE COURT: The objection is overruled. State's Exhibit No. 1 will be admitted."

Over defense counsel's objections, the jury heard evidence about the February incidents and the July 11th incident. The jury also was given the petition for the protective order. As previously mentioned, the jury found Mr. Boyd guilty of violating the protective order. The court sentenced Mr. Boyd to imprisonment for one year, but suspended all except for time already served, and placed Mr. Boyd on three years of supervised probation.

Mr. Boyd appealed to the Court of Special Appeals, arguing that the trial court erred in admitting the petition for the protective order and some of the testimony because the petition and testimony contained inadmissible hearsay statements. He also challenged the trial court's admission of the petition and other evidence relating to the February incidents on the ground that the evidence was inadmissible under Rule 5–404(b). Similarly, Mr. Boyd argued that the July 11, 2004, incident should have been considered a "prior bad act," that the trial court erred in failing to analyze it as such, and that evidence of the incident was not admissible under Rule 5–404(b). Mr. Boyd argued that the challenged evidence was not relevant, and that, even if it were, the prejudice outweighed any probative value. The State in the Court of

Special Appeals made a single argument, namely that the Circuit Court's evidentiary rulings were, on the merits, correct.

The Court of Special Appeals affirmed in an unreported opinion. The intermediate appellate court initially addressed the hearsay issue, and decided that the issue was not preserved for appellate review. The appellate court held that defense counsel had made general objections during trial and that ordinarily such objections "preserve[ ] for appellate review all grounds upon which the evidence could be deemed inadmissible." The Court of Special Appeals then stated that the "entire focus of the discussion at the hearing *in limine* concerning evidence of the February incident[s], including the petition itself, was whether the evidence was admissible as a prior bad act." The intermediate appellate court held that, because of the discussions during the motion *in limine* hearing, Mr. Boyd's general objections at trial failed to preserve the hearsay issue.

The Court of Special Appeals also upheld the trial court's decisions concerning the admissibility, under Rule 5–404(b), of the petition for a protective order and testimony about the February events. The intermediate appellate court held that, "[b]ecause evidence of appellant's repeated conduct is relevant to show whether he intended to harass Weaver, we affirm the court's ruling to admit the petition and testimony describing the February" incidents. In addition, the Court of Special Appeals held that admission of testimony concerning the July 11, 2004, incident was not erroneous because the trial judge explained that "it [would] be very difficult to have evidence of what happened on the 18th without any evidence of what happened on the 11th." The appellate court concluded that evidence of the July 11, 2004, incident was relevant to understand Ms. Weaver's conduct on July 18, 2004.

## II.

Mr. Boyd filed in this Court a petition for a writ of certiorari, presenting the following issues (although we have re-arranged their order):

"1. Did the intermediate appellate court err in holding that a general objection at trial was insufficient to preserve a hearsay issue, because that ground of objection had not been stated during a pretrial motion *in limine?*

"2. Is the conduct that formed the basis for entry of a protective order admissible in a prosecution for violation of that protective order?

"3. Did the circuit court err in admitting evidence of other crimes and bad acts (some of which was hearsay), including the application for a protective order?"

The State did not file a cross-petition for a writ of certiorari. This Court granted Mr. Boyd's petition, without adding or deleting any issues. *Boyd v. State*, 393 Md. 244, 900 A.2d 751 (2006).

The petitioner Boyd initially argues that the Court of Special Appeals erred in holding that defense counsel's general objections at trial did not preserve the hearsay issue for appellate review. Mr. Boyd contends that this holding is "novel," is contrary to the Maryland Rules, and is inconsistent with numerous opinions by this Court. With regard to the merits of the evidentiary issues, Mr. Boyd argues that the petition for the protective order and some of the evidence concerning the incidents in February 2004 and on July 11, 2004, constituted inadmissible hearsay, that the petition and testimony about the February and July 11th events were inadmissible under Rule 5–404(b), that the challenged evidence was not relevant to any material issue in the case, and that, in any event, any probative value of the challenged evidence was exceeded by its prejudicial nature.

The State, for the first time in its brief in this Court, argues that defense counsel's objections at trial were not general objections. Alternatively, the State, without citing any supporting authority, contends that the Court of Special Appeals correctly held that general objections at trial failed to preserve for appellate review the hearsay issue where the hearsay issue was not raised at the pretrial hearing on the motion *in limine.*

As to the merits, the State maintains that the petition for a protective order and some of the testimony about events prior to July 18, 2004, did not constitute hearsay because the evidence was not offered to prove the truth of the matter asserted. Rather, according to the State, the evidence supported the validity of the issuance of the protective order and helped explain Ms. Weaver's state of mind when she did not allow Mr. Boyd to visit Lyric on July 18, 2004. The State also contends that the trial court properly admitted the petition for a protective order and the testimony regarding the February incidents as evidence of prior bad acts because the evidence fell under the absence of mistake exception in Rule 5–404(b). In addition, the State asserts that testimony about the July 11th incident was proper and "necessary to show that Ms. Weaver was justified in not making her daughter available for visitation." The State also claims that this evidence demonstrated that Mr. Boyd "knew there was conflict relating to visitation and that he was well-aware of the [limits] of the visitation order."

### III.

We shall first address the State's arguments that the hearsay issue was not preserved for appellate review.

### A.

The State, in its brief in this Court, injects an issue that had not previously been raised in the case. The State for the first time argues that defense counsel's objections to the admission of evidence at trial "did not constitute general objections." (Respondent's brief at 10). As previously pointed out, the State did not file a cross-petition for a writ of certiorari challenging the Court of Special Appeals' holding that defense counsel made general objections at trial and that a general objection ordinarily "preserves for appellate review all grounds upon which the evidence could be deemed inadmissible." In fact, in its answer to Mr. Boyd's petition for a writ of certiorari, the State expressly acknowledged "that there

was a general objection to the admission of the protective order." (Answer to Petition for Writ of Certiorari at 9).

Under the circumstances, the contention that defense counsel's objections at trial were not general objections is not before us. See Maryland Rule 8–131(b) ("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition . . ."); *Rhaney v. UMES*, 388 Md. 585, 596 n. 7, 880 A.2d 357, 363 n. 7 (2005); *Renbaum v. Custom Holding*, 386 Md. 28, 33 n. 2, 871 A.2d 554, 557 n. 2 (2005); *Edwards v. Corbin*, 379 Md. 278, 284 n. 3, 841 A.2d 845, 849 n. 3 (2004) ("As this issue [presented for the first time in the brief] was not presented in the certiorari petition, a cross-petition, or added by order of this Court, it is not properly before us"), and cases there cited.

█ Even if the issue were before us, we would reject the State's argument. The State relies on the trial judge's reference to his "prior ruling" when defense counsel objected to the testimony of Ms. Fowlkes, and upon the trial judge's reference to the "pre-trial," when defense counsel objected to Ms. Weaver's testimony, and defense counsel's reply, "Yes, Your Honor, but I just need to make a record at the bench please." According to the State, this shows that the objections "did not constitute general objections" but were "based on the prior bad acts or other crimes arguments that [defense counsel] asserted pre-trial." (Respondent's brief at 10).

In our view, these vague references to the pretrial hearing did not amount to a specific ground for defense counsel's objections at the trial. At no time during the trial did the trial judge ask defense counsel to delineate the grounds for the objections, and at no time did defense counsel specify the grounds.

A somewhat similar factual situation was present, and a similar argument by the State was made, in *von Lusch v.*

*State,* 279 Md. 255, 263–264, 368 A.2d 468, 473 (1977). This Court's response in *von Lusch* is applicable to the present case:

> "In the instant case, we do not believe that the statements by petitioner's attorney were attempts to express specific reasons for the objection. Instead, they appear to be mere responses to the remarks of the trial court. * * * Both statements by counsel appear to have been prompted by remarks made by the trial court and not an attempt to delineate specific grounds for the objection."

*See also Bailey v. State,* 263 Md. 424, 426–427, 283 A.2d 360, 361 (1971) (Upon the prosecution's asking a witness about a prior conviction, defense counsel stated: "Objection, Your Honor. This is not pertinent to—," and the trial judge immediately said "Overrule the objection." The Court of Special Appeals held that the use of the word "pertinent" made it clear that the objection was not a general one but "was predicated on the traditional ground of relevance to impeach the credibility of the witness." This Court disagreed and reversed, holding, inter alia, that the objection was general).

Consequently, there is no merit in the State's argument that defense counsel's objections to evidence at trial did not constitute general objections.

### B.

■ We also reject the State's argument and the Court of Special Appeals' holding that a general objection to evidence at trial does not preserve all grounds for inadmissibility when specific grounds had been the focus at a pretrial hearing on a motion in *limine.* The State's argument and the intermediate appellate court's holding would create a new exception to the Maryland evidence principle regarding the sufficiency of a general objection. It is an exception which finds no support in the Maryland Rules or case law.

■ Maryland Rule 4–323, applicable to criminal cases,[1] Rule 2–517(a), applicable to civil cases,[2] and Rule 5–103(a)(1), applicable to cases generally,[3] reflect the long established

---

**1.** Rule 4–323 provides in pertinent part as follows (emphasis added):

"**Rule 4–323. Method of making objections.**

(a) **Objections to evidence.** An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. *The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs.*

\* \* \*

"(b) **Continuing objections to evidence.** At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope.

"(c) **Objections to other rulings or orders.** For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs.

\* \* \*

"(d) **Formal exceptions unnecessary.** A formal exception to a ruling or order of the court is not necessary."

**2.** Rule 2–517(a) provides (emphasis added):

"Rule 2–517. Method of making objections.

"(a) **Objections to evidence.**—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. *The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs.* The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled."

**3.** Rule 5–103(a)(1) states (emphasis added):

"**Rule 5–103. Rulings on evidence.**

"(a) **Effect of erroneous ruling.** Error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling, and

Maryland practice that a contemporaneous general objection to the admission of evidence ordinarily preserves for appellate review all grounds which may exist for the inadmissibility of the evidence. Under Rules 2–517, 4–323, 5–103(a)(1), and this Court's opinions, the only exceptions to the principle that a general objection is sufficient are where a rule requires the ground to be stated, where the trial court requests that the ground be stated, and "where the objector, although not requested by the court, voluntarily offers specific reasons for objecting to certain evidence," *von Lusch v. State, supra,* 279 Md. at 263, 368 A.2d at 472. *See, e.g., Grier v. State,* 351 Md. 241, 250, 718 A.2d 211, 216 (1998) ("If neither the court nor a rule requires otherwise, a general objection is sufficient to preserve all grounds of objection which may exist"); *Ali v. State,* 314 Md. 295, 305–306, 550 A.2d 925, 930 (1988) ("The effect of a general objection in this State is far-reaching. \* \* \* We have said that when the trial court does not request a statement of the grounds for an objection, a general objection is sufficient to preserve all grounds which may exist").

Moreover, this Court's opinions have consistently declined to broaden the established exceptions to the principle that a general objection is sufficient. For example, in *Johnson v. State,* 9 Md.App. 166, 177, 263 A.2d 232, 239 (1970), the Court of Special Appeals had held, *inter alia,* that the Maryland rule, that a general objection to evidence preserves all grounds for the inadmissibility of the evidence, did not apply when the objection was based on a "nontraditional ground." [4]

---

"(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground* was requested by the court or required by rule...."

**4.** In *Johnson,* the defendant's attorney objected to evidence of a prior conviction. The ground was that the prior conviction was invalid because the defendant had been denied his constitutional right to counsel. The Court of Special Appeals reasoned as follows (9 Md.App. at 177, 263 A.2d at 239):

Although the *Johnson* case did not come before the Court of Appeals, this holding by the Court of Special Appeals in *Johnson* was later dealt with in *Bailey v. State, supra,* 263 Md. 424, 283 A.2d 360. The "nontraditional ground" for inadmissibility in *Bailey* was different from that in *Johnson.* In *Bailey,* defense counsel made a general objection to the admission of evidence of a prior conviction; the ground argued on appeal was that an appeal of the prior conviction was pending, and that a statute made evidence of such prior conviction inadmissible when the prior conviction was still on appeal. This Court in *Bailey* overruled the above-described holding in *Johnson,* with Chief Judge Hammond stating for the Court (263 Md. at 428, 283 A.2d at 362):

> "[W]e do not agree with the view of the Court of Special Appeals that [the] Rule ... means one thing for 'traditional' grounds of objection and another for 'non-traditional' grounds. Indeed we think it would be difficult from time to time to decide whether a ground of objection was traditional or non-traditional. We see no room in the Rule or in the decisions for making such a distinction."

Other cases refusing to broaden the exceptions to the Maryland principle, that a general objection to evidence is ordinarily sufficient, include, *e.g., Grier v. State, supra,* 351 Md. at 250–251, 718 A.2d at 216; *Graves v. State,* 334 Md. 30, 36–37, 637 A.2d 1197, 1200–1201 (1994); *Ali v. State, supra,* 314 Md. at 305–307, 550 A.2d at 930–931; and *Robert v. State,* 220 Md. 159, 151 A.2d 737 (1959).

---

"[The] Rule ... provides that unless requested by the court, it is not necessary to state the grounds of objections to evidence. See *Robert v. State,* 220 Md. 159, 151 A.2d 737; compare *Wilt v. Wilt,* 242 Md. 129, 218 A.2d 180 [1966]; *Mulcahy v. State,* 221 Md. 413, 158 A.2d 80 [1960]. But we believe that objection on the nontraditional ground, as here made, was not within the contemplation of the Rule when adopted and that the fair administration of justice requires the defendant specifically to make known to the court the ground of his objection. We hold that it is incumbent upon the defendant, when his objection to the evidence of a prior conviction is on the ground that the conviction was constitutionally void to state his reasons to the court to enable it properly to determine the issue."

The State's argument, and the holding by the Court of Special Appeals, also gives considerable weight to a ruling, at a pretrial hearing on a motion *in limine,* in favor of admitting evidence. Under our cases, however, such a ruling in favor of admitting evidence carries little weight with regard to evidence objections at trial. The *in limine* ruling admitting evidence does not affect Rules 2–517(a), 4–323(a), and 5–103(a)(1), which ordinarily require contemporaneous *general* objections at trial.[5] *See, e.g., Reed v. State,* 353 Md. 628, 633–642, 728 A.2d 195, 198–202 (1999); *U.S. Gypsum v. Baltimore,* 336 Md. 145, 173–175, 647 A.2d 405, 419–420 (1994); *Simmons v. State,* 313 Md. 33, 37, 542 A.2d 1258, 1260 (1988); *Watson v. State,* 311 Md. 370, 372–373 n. 1, 535 A.2d 455, 457 n. 1 (1988); *Prout v. State,* 311 Md. 348, 356–357, 535 A.2d 445, 449 (1988).

In sum, defense counsel's objections to evidence at trial preserved for appellate review all grounds upon which the evidence might be deemed inadmissible.

## IV.

### A.

The petition for a protective order, to a large extent, consisted of Cathleen Weaver's recitation of what petitioner Ronald Boyd said to her on February 17 and 18, 2004. Similarly, some of the trial testimony by Barbara Fowlkes and Cathleen Weaver, which defense counsel objected to, consisted of testimony concerning what Mr. Boyd and other persons had said to the two witnesses in February 2004 and on July 11, 2004. In addition, the petition for the protective order and the challenged testimony described Mr. Boyd's conduct in February 2004 and on July 11, 2004.

As earlier indicated, Mr. Boyd argues that the evidence of out-of-court statements was inadmissible hearsay, and that the evidence regarding his statements and conduct prior to July 18, 2004, constituted inadmissible evidence of other "wrongs"

---

**5.** *See* notes 1, 2, and 3, *supra.*

or bad "acts" under Maryland Rule 5–404(b). Mr. Boyd also contends that the challenged evidence was irrelevant, and, to the extent that any of it was relevant, that the relevancy was outweighed by its prejudicial effect.

The State does not argue that the statements by out-of-court declarants fell within any exceptions to the Rule making hearsay inadmissible.[6] Instead, the State maintains that evidence of the out-of-court statements was " 'admissible as nonhearsay' " and was " 'not introduced for the purpose of showing that the facts asserted in the statement[s] are true.' " (Respondent's brief at 12–13, quoting *Graves v. State, supra,* 334 Md. at 38, 637 A.2d at 1201). The State contends that the statements in the petition for the protective order were "not admitted for the purpose of proving the truth of the matter asserted therein" but that the "statements . . . merely supported the validity of the issuance of the protective order, as well as helped to explain Ms. Weaver's state of mind on July 18, 2004, when she decided not to make Lyric available for visitation with [Mr.] Boyd, as prescribed by the protective order." (Respondent's brief at 13). According to the State, because "the thrust of the defense to violation of the protective order was that [Mr.] Boyd was merely trying to enforce his visitation rights when he followed Ms. Weaver in her car," the "fact that [Mr.] Boyd and [Ms.] Weaver had past visitation conflicts explained her state of mind in effectively denying Boyd visitation [on] July 18, 2004." (*Id.* at 15).[7]

---

**6.** Maryland Rule 5–802 provides as follows:

"**Rule 5–802. Hearsay rule.**

"Except as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible."

Maryland Rules 5–802.1, 5–803, and 5–804 set forth the various exceptions to the Rule precluding hearsay.

**7.** In response to the State's argument, the petitioner Boyd does not argue that these asserted "nonhearsay" uses of the out-of-court statements, at least in part, may depend upon the truth of the statements. Accordingly, this is a matter which we need not and shall not explore. In this connection, *see, e.g., United States v. Sesay,* 313 F.3d 591, 599 (D.C.Cir.2002); *United States v. Brown,* 767 F.2d 1078, 1084 (4th

Turning to Rule 5–404(b), which generally renders inadmissible evidence of other crimes, wrongs, or bad acts, the State asserts that evidence of Mr. Boyd's statements and conduct in February 2004 "was admissible under the absence of mistake exception" in Rule 5–404(b). (Respondent's brief at 20). The State contends that evidence of the July 11, 2004,

"visitation incident was necessary to show that Ms. Weaver was justified in not making her daughter available for visitation, as well as to show that [Mr.] Boyd knew there was conflict relating to visitation and that he was well-aware of the [boundaries] of the visitation order. As such, he could not claim that he was mistaken on July 18th, in thinking that he was permitted to follow Ms. Weaver in her car in order to enforce his visitation right." (*Id.* at 22).

## B.

■ The State's argument that the challenged out-of-court statements, contained in the petition for the protective order and testified to by witnesses, were admissible for the nonhearsay purpose of showing the "validity of the issuance of the protective order," is entirely without merit. There has never in this case been any issue, or hint of an issue, concerning the validity, propriety, or admissibility of the protective order itself. The petitioner Boyd has never challenged the reasons for or the validity of the protective order, has never claimed that the order was erroneously issued, and has consistently taken the position, beginning with the pre-trial hearing, that the protective order was admissible in evidence. In fact, Mr. Boyd expressly consented to the final protective order of February 23, 2004, and Mr. Boyd sought the modified final protective order of April 14, 2004.

■ Similarly misplaced is the State's reliance upon the other alleged "nonhearsay purpose" of the out-of-court state-

Cir.1985); *State v. Wade Elliot Runs Above,* 316 Mont. 421, 426–427, 73 P.3d 161, 165 (2003); 2 *McCormick On Evidence* § 246, at 129 n. 4 (2006 edition).

ments, namely to explain Ms. Weaver's "state of mind in effectively denying [Mr.] Boyd visitation July 18, 2004," and "to show that Ms. Weaver was justified in not making her daughter available for visitation" (respondent's brief at 15, 22). The issue in this case did not involve Ms. Weaver's state of mind on July 18, or whether she violated the terms of the protective order by denying visitation on that date, or whether Ms. Weaver's denial of visitation was "justified." The prosecution's entire theory was that Mr. Boyd violated the protective order by following Ms. Weaver on July 18. The only issue before the jury was whether Mr. Boyd's conduct on July 18, 2004, constituted a violation of the protective order. It was not the function of the jury to weigh Ms. Weaver's degree of fault, if any, against Mr. Boyd's degree of fault, if any, and then ascertain the proper balance. Ms. Weaver's conduct was not on trial; Mr. Boyd's conduct on July 18 was on trial.

The claimed nonhearsay purposes of the challenged out-of-court statements were not relevant to the material issue in the case. Even if it be assumed, *arguendo,* that these nonhearsay purposes might have a slight degree of relevance, such relevance was clearly outweighed by the prejudicial effect of Mr. Boyd's alleged threats and other statements on February 18, 19, and July 11, 2004. Under these circumstances, courts exclude the evidence on hearsay grounds. Thus, the out-of-court statements, which defense counsel objected to, should have been excluded as hearsay. *See Graves v. State, supra,* 334 Md. at 36–43, 637 A.2d at 1200–1204 (holding that somewhat similar out-of-court statements of bad acts, contained in written records and testimony by a police officer, and allegedly offered for a nonhearsay purpose, had limited relevance at best, that any relevance was outweighed by the prejudicial effect, and that the evidence should have been excluded as hearsay); *United States v. Brown,* 767 F.2d 1078, 1083–1084 (4th Cir.1985); 2 *McCormick On Evidence* § 249, at 136 n. 20, and cases there cited. *See also Bernadyn v. State,* 390 Md. 1, 8, 887 A.2d 602, 606 (2005) ("Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence. . . .

Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for admissibility. Whether evidence is hearsay is an issue of law"); *State v. Harrell,* 348 Md. 69, 83, 702 A.2d 723, 730 (1997) (An out-of-court statement that the defendant committed a particular crime or bad act held to be inadmissible as hearsay).

The State's contention that evidence of Mr. Boyd's conduct on July 11, 2004, was admissible "to show that Ms. Weaver was justified in not making her daughter available for visitation" on July 18, 2004 (respondent's brief at 22), has the same infirmity as the State's argument that evidence of Mr. Boyd's statements was relevant to show that Ms. Weaver's July 18th actions were "justified." The only issue in the case was whether Mr. Boyd's conduct on July 18 violated the protective order. Whether Ms. Weaver's denial of visitation was justified was immaterial.

## C.

◼ Maryland Rule 5–404(b), providing that evidence of other crimes, wrongs, or bad acts is ordinarily inadmissible, embodies the Maryland common law of evidence concerning other crimes, etc., which existed prior to the adoption of the Rule. *Streater v. State,* 352 Md. 800, 806, 724 A.2d 111, 114 (1999); *Merzbacher v. State,* 346 Md. 391, 406, 697 A.2d 432, 440 (1997). *Streater v. State, supra,* involved the admissibility of other crimes or bad acts evidence embodied in the protective order itself, unlike the present case which involves such evidence contained in the petition for the protective order. Judge Chasanow for the Court in *Streater* reviewed the applicable law as follows (352 Md. at 806–807, 724 A.2d at 114):

"We have often cited with approval Professor McCormicks general observation that 'the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.' JOHN W. STRONG,

McCormick on Evidence § 190, at 798 (4th ed.1992) (foot-notes omitted). *See, e.g., State v. Taylor*, 347 Md. 363, 368, 701 A.2d 389, 392 (1997); *Ross v. State*, 276 Md. 664, 669, 350 A.2d 680, 684 (1976).

\* \* \*

"As Md. Rule 5–404(b) recognizes, however, situations arise in which prior criminal or wrongful acts can be admitted. Our cases set forth a three-prong test for admissibility:

'When a trial court is faced with the need to decide whether to admit evidence of another crime—that is, evidence that relates to an offense separate from that for which the defendant is presently on trial—it first determines whether the evidence fits within one or more of the [special relevancy] exceptions. That is a legal determination and does not invoke any exercise of discretion.

'If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence.\* \* \*

'If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. This segment of the analysis implicates the exercise of the trial court's discretion.' (Citations omitted).

*State v. Faulkner*, 314 Md. 630, 634–35, 552 A.2d 896, 898 (1989).

\* \* \*

"These substantive and procedural protections are necessary to guard against the potential misuse of other crimes or bad acts evidence and avoid the risk that the evidence will be used improperly by the jury against a defendant. As Professor McLain has observed: '[T]he evidence may not be

used merely as a ruse to accomplish the prohibited objective' of proving a person acted in conformity with his or her character. LYNN MCLAIN, MARYLAND EVIDENCE § 404.5, at 354 (1987)."

The evidence of Mr. Boyd's alleged wrongful conduct in February 2004 and on July 11, 2004, contained in the petition and the testimony, fails the first and the third of the prongs described above.

The State's argument in the Circuit Court, the Court of Special Appeals,[8] and this Court, in favor of admitting the evidence under Rule 5–404(b), was solely that the evidence was admissible under the "absence of mistake" provision in Rule 5–404(b). According to the State, the evidence was relevant so that Mr. Boyd "could not claim that he was mistaken on July 18th, in thinking that he was permitted to follow Ms. Weaver in her car in order to enforce his visitation right." (Respondent's brief at 22).

A major problem with the State's theory, however, is that Mr. Boyd, who did not testify at trial, has never asserted or defended on the ground that his conduct on July 18th, if it was inconsistent with the protective order, was permitted or was based on a mistake or a mistaken belief. Judge Cathell for the Court in *Wynn v. State,* 351 Md. 307, 718 A.2d 588 (1998), extensively discussed the general admissibility of other crimes or bad acts evidence, and specifically dealt with the "absence of mistake" exception. After reviewing numerous cases and other authorities, Judge Cathell explained one of the prerequisites for the exception (*Wynn,* 351 Md. at 330–331, 718 A.2d at 599–600, emphasis in original):

"Our examination of the commentators and the case law both in Maryland and in other jurisdictions *that we have discussed* reveals a general prerequisite to the application of the absence of mistake exception. In order for the exception to apply, the defendant generally must make some assertion or put on a defense that he or she committed the

---

8. *See* appellee's brief in the Court of Special Appeals at 11.

act for which he or she is on trial, but did so by mistake. In those cases noted above in which the exception was found not to apply, the defendant made no assertion or put forward no defense that he or she mistakenly committed the *act for which he or she was on trial.*"

Like the defendants in the cases discussed in *Wynn*, and like the defendant in *Wynn*, the defendant Boyd "made no assertion or put forward no defense that he ... mistakenly committed the act for which he ... was on trial." (*Ibid.*, emphasis deleted).

In affirming the conviction, the Court of Special Appeals stated that the evidence of prior wrongful conduct was admissible under Rule 5–404(b)because it was "relevant to show whether he [Mr. Boyd] intended to harass Weaver...." If the intermediate appellate court was referring to the crime of "harassment" prohibited by Maryland Code (2002), § 3–803 of the Criminal Law Article, Mr. Boyd was not charged with such crime. The only alleged crime for which he was tried was violation of the protective order. *Cf., Streater v. State, supra,* 352 Md. at 812–817, 724 A.2d at 117–119, where the defendant was, *inter alia,* charged with harassment, and this Court reversed the conviction because of the trial court's failure to follow the requirements of Rule 5–404(b). If the Court of Special Appeals meant that the evidence demonstrated a criminal intent rather than mistaken conduct, *Wynn v. State, supra,* is dispositive. Mr. Boyd at no time claimed that he acted mistakenly. He at no time asserted that he lacked knowledge of the protective order or misunderstood it. Moreover, there was no contention that Mr. Boyd intended anything other than what he did on July 18th. The facts concerning July 18, 2004, were basically undisputed. The defense was simply that Mr. Boyd's July 18th conduct was not a violation of the protective order.

██ Finally, if there were some merit in the State's contention that the evidence of prior wrongful conduct was somehow relevant to absence of mistake, the relevance would be slight compared to the prejudicial effect of the evidence. The possi-

bility that the jury may have convicted Mr. Boyd because of his conduct on February 17 and 18, and July 11 and 18, 2004, rather than just his conduct on July 18th, is not farfetched.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

Judge CATHELL concurs in the result only.