CURLEY EDMONDS, NORMAN HENRY McCARTHY AND ROBERT OWENS BRUMFIELD *v.* STATE OF MARYLAND

[No. 521, September Term, 1972.]

*Decided June 4, 1973.*

The cause was argued before ORTH, C. J., and MORTON and THOMPSON, JJ.

*John R. Toston, Assigned Public Defender,* for appellant Curley Edmonds. Submitted on brief by *John R. Toston, Assigned Public Defender,* for appellants Norman Henry McCarthy and Robert Owens Brumfield.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Fred A. Thayer, State's Attorney for Garrett County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellants, Curley Edmonds, Norman Henry McCarthy and Robert Owens Brumfield, were convicted in a non-jury trial in the Circuit Court for Garrett County of unnatural and perverted sex practices. Each was sentenced to a term of eight years. In this appeal they contend that (1) their trial on the merits before the same judge who presided over their juvenile waiver hearing constituted a denial of due process, and (2) their judgments of convictions were clearly erroneous.

Clement Anthony, an eighteen year old youth, testified that he arrived at the Backbone Mountain Forestry Camp, a detention center for young males, on May 19, 1972. According to Anthony, "that afternoon, I was asked to go to the gym to have — to give Robert Brumfield and McCarthy

a beat-off job and a blow job." When asked, "what was your response to this?", he replied: "Well, I didn't — at first, I didn't want to go over, but after — after about fifteen or twenty minutes, I did go over, and I was — was forced to do that." He stated that they showed him a card which indicated "[t]hey could issue contracts for people to be killed." When asked what that meant to him, he replied: "Well, that they could — that that would happen to me."

Upon arrival at the gym there were some nine boys gathered there and according to the victim, he was not only compelled to perform acts of masturbation and fellatio upon appellants McCarthy and Brumfield, but upon "all nine of them." Anthony explained: "Well, they — they was acting like they was playing basketball, and one boy was watching — watching the door, and all — all along, they were taking turns. There was no way possible I could get out of the gym." He specifically exonerated the appellant Edmonds as a participant on this occasion.

Anthony did not report this attack to the authorities because as "a new boy at the camp", "I was — I was scared."

The following week, according to Anthony, "I was out by the back of the dorm, and a couple of the — couple of the boys came up and said give me a beat-off and up the — up the rectum, so — * * * And at that time, I did not give a beat-off job, but instead of a penis going up my rectum, the boys put a mop handle up my rectum." He could not identify the individual or individuals who wielded the mop handle.

After this episode Anthony reported the attack to the authorities who initiated the investigation leading to these cases and Anthony was transferred to another detention center.

Derrick Moody, an inmate at the detention center, testified that on May 19, 1972, he and several other boys, including Anthony and Brumfield, were watching television when Brumfield "grabbed the boy by — by his neck and well, — told him to suck his privates, would he suck his privates for him that night." Moody did not accompany the boys to the gym. He continued to testify: "Then — then the next time I saw something happen to Anthony was that

Curley Edmonds, right over there, stuffed a mop handle up his rear." When asked: "You didn't do anything to stop this?", he replied: "No, sir, 'cause there was a big crowd around there and everybody was jumping and laughing and hollering and everything, and then one of the counselors — they thought that Mr. Perry would come along and then everybody ran."

Jackie Wilmer, another inmate of the detention center, testified that he was not present at the first attack upon Anthony in the gym on May 19 but he was present the following week and observed the mop handle attack. "The only thing I seen was when he was on the side of the building * * * Somebody stuck a broomstick up his rectum." When asked who it was, he first replied: "It was Curley [Edmonds] there, I think." Later he was asked: "Are you uncertain it was Curley?", he replied: "It was Curley."

While McCarthy and Brumfield did not testify, Edmonds took the stand and when asked: "You did not put a broom handle up Mr. Anthony's rectum?", he replied: "That's right."

The appellants' first contention is not properly before us since no objection was interposed to the trial judge presiding at the trial below and he was not asked to disqualify himself on the ground that he had also presided at their waiver hearing. The issue simply was not preserved for review by this Court. Maryland Rule 1085. Moreover, the record of the waiver proceedings is not before us and we cannot speculate or presume that evidence produced at the waiver hearing in any way influenced the judgment of the presiding judge in reaching the guilty verdicts. See *State v. Hutchinson*, 260 Md. 227.

We can find no merit in the contention of McCarthy and Brumfield that the evidence was legally insufficient to sustain their convictions. The compelling testimony of the victim alone was amply sufficient to warrant a finding of their guilt.

Nor are we persuaded that Edmonds could not be found guilty of an unnatural and perverted sex practice simply because the evidence showed that a broom stick or a mop

handle rather than a sex organ was used to penetrate the victim's rectum. The statute under which Edmonds was convicted, Md. Code, Art. 27, § 554, provides in part:

> "Every person who shall be convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court."

The appellant Edmonds argues "that on the facts in this case, there was no conduct on his part, if the State's witnesses are believed, that amounted to a sex act." He contends that since there was no "actual contact with sexual organs of either the victim or the Defendant", the act of inserting the mop or broom handle into the victim's rectum was not a proscribed act within the contemplation of the statute.

While appellant recognizes that in *Blake v. State*, 210 Md. 459, the statute (then § 627) withstood attack upon its constitutionality as being vague and indefinite, he does not acknowledge that the Court of Appeals in *Blake* found "in the language employed a clear legislative intention to cover the whole field of unnatural and perverted sexual practices." The Court of Appeals was unpersuaded that "because the statute begins with a prohibition against 'oral' perversion, the words 'any other unnatural or perverted sexual practice' must be restricted accordingly, under the rule of *ejusdem generis.*" It was pointed out that the "rule of *ejusdem generis*, however, is merely a rule of construction, and cannot be invoked to restrict the meaning of words within narrower limits than the statute intends, so as to subvert its

obvious purpose." The Court concluded: "We find in the language employed a clear legislative intention to cover the whole field of unnatural and perverted sexual practices. We think it was unnecessary to describe in detail practices which are matters of common knowledge. Moreover, the section provides that 'in any indictment for the commission of any of the acts, hereby declared to be offenses, it shall not be necessary to set forth the particular unnatural or perverted sexual practice with the commission of which the defendant may be charged, nor to set forth the particular manner in which said unnatural or perverted sexual practice was committed, * * *.' We quote this as an indication that the Legislature had in mind practices other than those in the oral category." *Id.* at 462-463.

We cannot agree, as the appellant argues, that the anal passage may not be classified as a sexual organ within the meaning of the statute for it is well known that it has been the source of sexual gratification however perverted or distasteful such a method of gratification may be considered. In fact, the acts of sodomy or buggery specifically involve the penetration of the rectum. Had the appellant's penis been used to penetrate the victim's rectum, there would be no question that it would have amounted to an act of sodomy or buggery. That appellant elected to use a mop or broom handle certainly takes the act out of the category of sodomy or buggery. It does not, however, in the circumstances here, take the action outside the classification of an unnatural and perverted sex practice.

It is true that there may be occasions when the act of penetrating a person's rectum with a broomstick or mop handle would be solely a cruel, torturous act with no sexual connotations or overtones. In the circumstances here, however, the whole atmosphere of the affair was that of an unnatural and perverted sex orgy. Boys were "laughing and hollering." Anthony had been forced to the side of the dorm for the announced purpose of buggery and as he put it: "[I]nstead of a penis going up my rectum, the boys put a mop handle up my rectum." We cannot find in light of the bizarre attitudes of those sadistically enjoying the Edmonds

performance that the judge was clearly erroneous in finding that Edmonds was guilty of an unnatural and perverted sex act.

*Judgments affirmed.*