18 A.3d 130

**Kelvin COUSAR**

v.

**STATE of Maryland.**

No. 2683, Sept. Term, 2009.

Court of Special Appeals of Maryland.

April 28, 2011.

488

490

492

Renee Hutchins (University MD School of Law, on the brief), Baltimore, MD, for appellant.

Robert Taylor, Jr. (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MEREDITH, WATTS, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

WATTS, J.

After a trial held from November 18, 2009 through November 20, 2009, a jury in the Circuit Court for Charles County convicted Kelvin Cousar, appellant, of unnatural or perverted sexual practices, third degree sexual offense, reckless endangerment, and wearing, carrying, or transporting a handgun. *See* Md.Code Ann., Crim. Law ("C.L.") § 3–322 (unnatural or perverted sexual practice); C.L. § 3–307(a)(1) (third degree sexual offense); C.L. § 3–204(a)(1) (reckless endangerment); and C.L. § 4–203 (wearing, carrying, or transporting a handgun).[1] Subsequently, on January 25, 2010, the court sentenced appellant to three years of imprisonment for wearing, carrying, or transporting a handgun, a consecutive five years for reckless endangerment, and a consecutive ten years for third degree sex offense, for a total of eighteen years of imprisonment.[2]

On appeal, appellant presents two issues, which we have rephrased as follows:[3]

I. Whether the trial court erred in admitting, over appellant's objection, the testimony of an alleged rape victim from an unrelated pending case?

II. Whether the trial court erred in instructing the jury as to reckless endangerment by allegedly omitting the elements of the offense?

---

**1.** Appellant was acquitted of first and second degree sexual offense and first and second degree assault.

**2.** The circuit court found that the offense of unnatural or perverted sexual practices merged with third degree sex offense for sentencing.

**3.** Appellant worded the issues thus:

I. By admitting the testimony of an alleged rape victim from an unrelated, pending matter over defense counsel's objection, did the trial court allow the State to use evidence of other crimes impermissibly and violate Mr. Cousar's constitutional right of due process?

II. By failing to instruct the jury on the elements of the crime of reckless endangerment, did the trial court undermine the jury's ability to apply the law and thereby compromise the fairness of the trial in violation of Mr. Cousar's constitutional right to due process?

We find no error and affirm the judgments of conviction, for the reasons set forth below.

## BACKGROUND

The acts for which appellant was convicted occurred on April 12, 2009, during a meeting between appellant and a Ms. Stahl ("Stahl") at the Master Suites hotel in Waldorf, Maryland. Stahl offered erotic services on the online advertising site known as Craigslist. Appellant made inquiries for sexual services through Craigslist, and identified Stahl as someone he wanted to contact. Appellant and Stahl agreed, in advance, via telephone, to meet at the hotel. Stahl arrived first at the hotel and invited appellant into the room. According to Stahl's testimony, once inside, she completed the agreed-upon activity of "stripping and grinding" in exchange for payment of $200.00. Appellant then produced a gun and forced Stahl to undress and lay on the bed while he straddled her and defecated in her mouth. Appellant also forced Stahl to engage in oral and anal sex while holding the gun to her head. Stahl testified, at trial, that she did not consent to being defecated on or to the oral and anal sexual activity.

Detective Jack Austin, Charles County Sheriff's Department, a witness for the State, testified that, on May 1, 2009, he arrested appellant. Austin testified appellant told him the sexual activity with Stahl was consensual, and that appellant acknowledged defecating on Stahl, but said the defecating was "accidental."

The State introduced the testimony of Ms. Swanson ("Swanson"). Swanson is the alleged victim in an unrelated case that was pending against appellant in the Circuit Court for Prince George's County. Swanson testified that she met appellant at her apartment on February 20, 2009, less than two months prior to appellant's encounter with Stahl. Swanson testified that her meeting was also generated by Craigslist, where she advertised erotic services. Swanson testified that, while inside her apartment, after a disagreement about payment, appellant produced a gun, told Swanson to undress and instructed her to

perform anilingus.[4] Swanson testified appellant defecated in her mouth while she was performing anilingus. Swanson testified that appellant forced her, with the results of the defecation still in her mouth, to perform oral sex. Swanson testified that she did not consent to being defecated upon.

Prior to Swanson taking the stand, appellant moved *in limine* to exclude Swanson's testimony, arguing that the testimony constituted inadmissible propensity evidence. Appellant argued the prejudicial effect of Swanson's testimony outweighed the probative value. The circuit court determined Swanson's testimony to be admissible to show intent[5] or under the absence of mistake exception of Maryland Rule 5–404(b), as argued by the State.

Appellant testified that the sexual activity with Stahl was consensual, and that the defecation was not for sexual gratification.

At the conclusion of all of the evidence in the case, and prior to closing argument, the court instructed the jury. As to reckless endangerment, the court instructed: "A person may not recklessly engage in conduct that creates a substantial risk of death or serious physical injury to another." Prior to instructing the jury, the trial judge gave each attorney a copy of the jury instructions he intended to utilize, in order for the attorneys to "follow along" as the court instructed the jury. At the conclusion of giving the jury instructions, the trial judge asked both counsel, on three separate occasions, whether they were satisfied with the given instructions. Neither attorney made any exception or objection to the court's instruction as to reckless endangerment.

---

4. Anilingus is defined by the Merriam–Webster Dictionary as "erotic stimulation achieved by contact between mouth and anus." Merriam–Webster Dictionary, 2011, http://www.merriam-webster.com/.

5. In admitting Swanson's testimony, the circuit court found the evidence admissible to "show his intent or absence of mistake." The offense of unnatural or perverted sexual practice, however, does not require intent as an element. C.L. § 3–322. On appeal, the parties have, therefore, not addressed whether the evidence was admissible for the specific purpose of showing intent.

## DISCUSSION

### I.

Appellant contends the circuit court erred in admitting Swanson's testimony that he defecated on her for three reasons: (1) Other crimes evidence is inadmissible to prove character of a person in order to show conduct in conformity therewith; (2) The testimony was used only to buttress the testimony of the complaining witness; and (3) Swanson's testimony was not relevant and was used to show criminal propensity.

The State acknowledges that evidence of a defendant having committed similar acts may not be introduced to prove a propensity to commit the acts in question, but asserts that, under Maryland Rule 5–404(b), such evidence may, however, be introduced to prove conduct other than propensity. The State points out that Maryland Rule 5–404(b) offers a non-exhaustive list of things that may be proven with evidence of prior acts, including "absence of mistake or accident," and contends that such evidence was appropriately admitted, in this case, to refute appellant's claim of mistake or accident.

█ Maryland Rule 5–404(b) generally renders inadmissible evidence of other crimes, wrongs, or bad acts. *Thompson v. State*, 412 Md. 497, 521–22, 988 A.2d 1011 (2010). Rule 5–404(b), providing that evidence of other crimes, wrongs or bad acts is ordinarily inadmissible, "embodies the Maryland common law of evidence concerning other crimes, etc. which existed prior to adoption of the Rule." *Boyd v. State*, 399 Md. 457, 482, 924 A.2d 1112 (2007) (citing *Streater v. State*, 352 Md. 800, 806, 724 A.2d 111 (1999); *Merzbacher v. State*, 346 Md. 391, 406, 697 A.2d 432 (1997)).

█ As Maryland Rule 5–404 explicitly recognizes, however, there are circumstances under which prior criminal or wrongful acts are admissible. Case law sets forth a three-pronged test for admissibility:

When a trial court is faced with the need to decide whether to admit evidence of another crime—that is, evi-

dence that relates to an offense separate from that for which the defendant is presently on trial—it first determines whether the evidence fits within one or more of the [*Cross* ] exceptions. That is a legal determination and does not involve any exercise of discretion. *See Cross* [*v. State* ], 282 Md. [468,] at 474, 386 A.2d [757,] at 761 [ (1987) ]; *Moore v. State,* 73 Md.App. 36, 44, 533 A.2d 1, 5 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988).

If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. *Lodowski v. State,* 302 Md. 691, 728, 490 A.2d 1228, 1247 (1985), *defendant's petition for cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725, *vacated,* 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711, *rev'd on other grounds,* 307 Md. 233, 513 A.2d 299 (1986); *Cross,* 282 Md. at 478, 386 A.2d at 764. We will review this decision to determine whether the evidence was sufficient to support the trial judge's finding.

If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. *Cross,* 282 Md. at 474, 386 A.2d at 761 [citations omitted]. This segment of the analysis implicates the exercise of the trial court's discretion. *Id.; Moore,* 73 Md.App. at 44–45, 533 A.2d at 5.

*State v. Faulkner,* 314 Md. 630, 634–35, 552 A.2d 896 (1989).[6]

 As a threshold matter, in determining whether to admit evidence under Maryland Rule 5–404(b), a court must

---

**6.** Additionally Maryland Rule 5–404(b), codifies the "sexual propensity" exception to the general rule excluding "other crimes" evidence. As the Court of Appeals stated in *Vogel v. State,* 315 Md. 458, 466, 554 A.2d 1231 (1989), the "sexual propensity" exception is applicable to evidence of "prior illicit sexual acts [which] are similar to the offense for which the accused is being tried and involve the same victim."

Before Maryland Rule 5–404(b) was adopted, [the Court of Appeals] stated:

evaluate whether evidence is introduced for some purpose other than to suggest that, because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial. *Boyd*, 399 Md. at 483, 924 A.2d 1112. The evidence must fit into one of the categories of special relevance. In this case, the State's argument and the circuit court's reason for admission of Swanson's testimony was that the evidence fit the category of "absence of mistake." For the following reasons, we agree.

In *Wynn v. State*, 351 Md. 307, 718 A.2d 588 (1998), the Court of Appeals thoroughly examined the general admissibility of other crimes or bad acts evidence and specifically analyzed the "absence of mistake" exception. The Court, in *Wynn*, stated: "[Maryland Rule 5–404(b) ] means that evidence that the defendant committed other crimes or bad acts is not admissible unless it has special relevance—that it 'is substantially relevant to some contested issue and is not offered simply to prove criminal character.'" *Id.* at 316, 718

---

The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." Yet, in the area of sex crimes, particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." In sex crimes cases the special relevance of the other crimes evidence that may be admissible is a criminal propensity particularized to similar sex crimes perpetrated on the same victim.

Thus, in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect. The discretion exercised by the trial judge in weighing unfair prejudice against probative value is concerned with special features in the particular case.

*Thompson v. State*, 412 Md. 497, 534, 988 A.2d 1011 (2010) (quoting *Acuna v. State*, 332 Md. 65, 75, 629 A.2d 1233, (1993) (citations omitted)).

A.2d 588 (quoting *State v. Taylor*, 347 Md. 363, 368, 701 A.2d 389 (1997)). In *Wynn*, the Court of Appeals reiterated and applied the three step analysis of *Faulkner*. *Id.* at 324, 718 A.2d 588. Explaining common factual scenarios within the absence of mistake exception, the Court quoted Professor Lynn McLain, stating:

> If the defendant admits that he or she took an action, but claims to have done so unintentionally or by mistake, so that allegations of, for example, forgery, fraud, embezzlement, or malice are unfounded, the prosecution may offer evidence of his or her similar prior wrongs, acts, or crimes. This use of the evidence as proof of absence of mistake is merely the obverse of proof of intent.

*Wynn*, 351 Md. at 325, 718 A.2d 588 (footnote omitted) (quoting Lynn McLain, Maryland Practice § 404.12 (footnotes omitted)). Further, the Court of Appeals described a factual scenario in which a defendant asserts he was not responsible for the act causing injury, as the injury was caused by an independent accident. *Wynn*, 351 Md. at 326, 718 A.2d 588. In this scenario, other crimes evidence could rebut the argument that an independent accident was the cause of the injury. *Id.*

 After discussing many cases and authorities from Maryland,[7] and other jurisdictions,[8] the Court, in *Wynn*, held that

---

7. The Court of Appeals analyzed three Maryland cases: *Emory v. State*, 101 Md.App. 585, 647 A.2d 1243, *cert. denied*, 337 Md. 90, 651 A.2d 855 (1994) (We excluded evidence of prior, uncharged drug related activities because defendants never argued that their involvement in drug-related activities was inadvertent or a mistake.); *McKinney v. State*, 82 Md.App. 111, 570 A.2d 360 (1990) (We found that a mistake defense was not asserted and therefore the other crimes evidence would establish no material fact.); *Hoes v. State*, 35 Md.App. 61, 368 A.2d 1080, *cert. denied*, 280 Md. 731 (1977) (At trial defendant admitted that he had thrown a gun up, and it went off, but denied he intended to shoot the victim; the other crimes evidence of shooting the same victim four or five years ago was admitted.).

8. The Court of Appeals discussed: *State v. Brogan*, 272 Mont. 156, 900 P.2d 284 (1995) (The court admitted other crimes evidence finding this evidence relevant to rebut defendant's argument that the wild animals

for the "absence of mistake" exception in Maryland Rule 5–404(b) to apply, a defendant generally must make some assertion or put on a defense that he or she committed the act for which he or she is on trial, but did so by mistake.[9] *Id.* at 326–31, 718 A.2d 588. Additionally, in order for the exception to apply, the crime or bad act allegedly committed by mistake must be the same crime or bad act for which the defendant is on trial. *Id.* at 332, 718 A.2d 588.

Following *Wynn,* in *Boyd,* 399 Md. at 484–85, 924 A.2d 1112, the Court of Appeals reiterated:

> Judge Cathell for the Court in *Wynn v. State,* 351 Md. 307, 718 A.2d 588 (1998), extensively discussed the general admissibility of other crimes or bad acts evidence, and specifically dealt with the "absence of mistake" exception. After reviewing numerous cases and other authorities, Judge Cathell explained one of the prerequisites for the exception (*Wynn,* 351 Md. at 330–331, 718 A.2d at 599–600, emphasis in original):
>
>> "Our examination of the commentators and the case law both in Maryland and in other jurisdictions *that we have discussed* reveals a general prerequisite to the application of the absence of mistake exception. In order for the exception to apply, the defendant generally must make some assertion or put on a defense that he or she committed the act for which he or she is on trial, but did

---

on his property must have entered his property by mistake.); *Margetts v. State,* 107 Nev. 616, 818 P.2d 392 (1991) (The court admitted the other crimes evidence as the defendant testified at trial that he issued a bad check by mistake.); *State v. Crawford,* 329 N.C. 466, 406 S.E.2d 579 (1991) (The court admitted evidence of prior maltreatment of children, as the defendant testified that he was not punishing the child but rather made a mistaken effort to treat the child.).

9. In *Wynn* the petitioner did not testify "that he entered the house mistakenly or that the housebreaking was a mistake ... petitioner did not assert that he mistakenly entered the Quigley residence and took the items at issue believing that he had a right to do so. Petitioner did not assert that he had stumbled mistakenly into the Quigley premises. Rather, petitioner asserted that he did not commit the acts with which he was charged." 351 Md. at 331, 718 A.2d 588.

so by mistake. In those cases noted above in which the exception was found not to apply, the defendant made no assertion or put forward no defense that he or she mistakenly committed the *act for which he or she was on trial.*"

The factual scenario in this case satisfies the prerequisites for admission of absence of mistake evidence established by the Court in *Wynn.*[10] Stahl testified that after a consensual sexual encounter for payment, appellant displayed a handgun, held the gun to her head, forced her to undress, straddled her, and defecated into her mouth. The State sought to prove that the act of defecating into the victim's mouth constituted an unnatural or perverted sexual practice, in violation of C.L. § 3–322 (2003).[11]

When arrested by Detective Austin, appellant denied using a handgun or force against Stahl. Appellant described the incident as an encounter with a prostitute and told Detective Austin that the defecation was accidental. Detective Austin testified as follows:

---

**10.** In *Wynn,* the Court of Appeals stated, "[i]n other crimes evidence issues, as to whether a matter fits within an exception in the first instance, we extend no deference to a trial court's decision." 351 Md. at 318, 718 A.2d 588.

**11.** Although the State argued that the act of defecation was the unnatural or perverted sexual practice, the statute, case law, and facts reveal that the act of anilingus, in and of itself, in conjunction with payment, is an unnatural or perverted sexual practice. Here, appellant admits to paying Stahl, making it a commercial activity, and performing the act of anilingus. *Schochet v. State,* 320 Md. 714, 731, 580 A.2d 176 (1990) ("... § 554[unnatural or perverted sexual practices] does not encompass consensual, **noncommercial,** heterosexual activity between adults in the privacy of the home.") (emphasis added). Further, "[t]he prohibition against any other unnatural or perverted sexual practices has been held 'to cover the whole field of unnatural and perverted sexual practices.'" MPJI–Cr. 4:34, cmt. (2007) (citing *Blake v. State,* 210 Md. 459, 462, 124 A.2d 273 (1956) (sodomy); *Edmonds v. State,* 18 Md.App. 55, 305 A.2d 205 (1973) (broom handle placed in the rectum)). Moreover, the statute provides that "it shall not be necessary to set forth the particular unnatural or perverted sexual practice ..., nor to set forth the particular manner in which [it] was committed...." MPJI–Cr. 4:34, cmt. (2007) (citing Md. Ann.Code art. 27, § 554).

[PROSECUTOR]: Okay. Did he make any indication that he was in Waldorf at the Master Suites hotel on [sic] that time?

[DETECTIVE AUSTIN]: Yes. Yes.

[PROSECUTOR]: Okay. Did he indicate that he had any—contact with Ms. Stahl?

[DETECTIVE AUSTIN]: Yes.

[PROSECUTOR]: Through your investigation—speaking to Ms. Stahl you're aware of the—the statement she made about the [appellant] defecating?

[DETECTIVE AUSTIN]: Yes.

[PROSECUTOR]: Okay. What if anything, did the [appellant] say to you about that?

[DETECTIVE AUSTIN]: He said it was an accident; it accidentally occurred.

At trial, Appellant testified, in his own defense:

[PROSECUTOR]: Did you ever defecate on her which means go to the bathroom?

[APPELLANT]: She said I did.

[PROSECUTOR]: I'm not worried about what she said. Is that what you did? Do you know?

[APPELLANT]: In all honesty Sir, to give you a totally honest answer, I really don't.

[PROSECUTOR]: Okay.

[APPELLANT]: I honestly don't. I mean like I was in an enjoyable—into a sexual act. I was into an enjoyable moment. The next [sic] you know she pushed me up and just—and that was it. But—and because of her reaction, I mean, I honestly believe, you know what I mean, that whatever she said was whatever it was because of her reaction to be totally honest. But I don't—I didn't—I don't—I don't recall doing that. But—you know.

[PROSECUTOR]: Did you defecate or go to the bathroom for sexual gratification?

[APPELLANT]: No.

[PROSECUTOR]: Okay.

[APPELLANT]: Nah. Nah. No, Sir.

[PROSECUTOR]: Okay.

[APPELLANT]: You said cause you—you asking me did I go, use the bathroom for some type of sexual enjoyment? Is that what you ask?

[PROSECUTOR]: Yes, that was my question.

[APPELLANT]: Oh no, Sir. Nah. No. No.

The circuit court, finding the evidence satisfied the prerequisites for admission under Maryland Rule 5–404(b), held:

THE COURT: Well, I have to look at first whether the other acts alleged and I'm going to accept the proffer for the purposes of this Motion in Limine—that I could find by clear and convincing evidence that the—alleged victim in the Prince George's County case would testify in accordance with what the State—represents.

But whether the other acts are substantially probative to a contested issue in the case other than to show that—conduct in the character or—and because the defense is going to be consent that it would be relevant to show his intent or absence of mistake or accident if that is in fact what he's—is [sic] position is going to be.

And weighing that against the—I mean certainly it's prejudicial, I mean it's—but is it unduly prejudicial and—I do find that it is more probative than prejudicial. Under the circumstances I'm gonna deny the Motion in Limine.

Appellant asserted pretrial that the act of defecation was accidental and, at trial, testified that the defecation was not for sexual gratification. The other crimes evidence, introduced by the State, involving Swanson, consisted of the same bad act or prior conduct as that for which appellant was on trial, defecating into the victim's mouth. Given that appellant made an assertion and put on a defense that he committed the act for which he was on trial, but did so by mistake or accident, and the crime or bad act evidence introduced at trial involved the same crime or bad act for which the defendant was on trial, we find no error in the circuit court's determination that the

evidence was admissible under the absence of mistake exception of Rule 5–404(b).[12]

Appellant relies on *Hurst v. State*, 400 Md. 397, 929 A.2d 157 (2007), in which the Court of Appeals held evidence of sex offenses by the accused against a different victim to be inadmissible. We are aware that the Court in *Hurst* considered the relevance of uncharged sexual offenses committed by an accused against a different victim to prove consent in a current case. The Court, in *Hurst*, however, did not address the issue of the admission of testimony by a different victim to prove the absence of mistake, or that a particular action by the accused was not accidental. In *Hurst*, the Court found the testimony of the victim of an earlier assault was improperly admitted, as it was not relevant to prove whether the victim in the current case consented, and that the error in admitting the testimony was not harmless. *Id.* at 410, 929 A.2d 157. In *Hurst*, the sole contested issue in the case was whether the current victim consented to the sexual acts. The Court reasoned:

> The State was required to demonstrate a lack of consent on the part of Ms. P. as to the sexual activities that it alleged. Evidence that a third party did not consent to sexual intercourse with petitioner in the past has no bearing on whether Ms. P. consented to sexual activity. Ms. E.'s testimony was irrelevant as well to Ms. P.'s consent or lack of consent. It was in essence evidence that petitioner possessed a criminal propensity to engage in sex crimes and, as such, was inadmissible.

*Id.*

The defense of consent and the defense of mistake or accident differ on a fundamental level. Consent is based on

---

**12.** Appellant in his Reply Brief argues that the State's reliance on *Taylor*, 347 Md. 363, 701 A.2d 389, for the proposition that "admission of Ms. Swanson's testimony was appropriate in the instant case even if no defense of mistake was raised," is misplaced. We need not address the State's reliance on *Taylor*, as we conclude that the factual scenario in this case satisfies the prerequisites for admission of absence of mistake evidence.

the conduct of the victim, whereas mistake or accident is based on the repetitive nature of the defendant's conduct.[13] The Court, in *Hurst*, was not confronted with the admissibility of a different victim's testimony regarding a sexual act where the accused claimed the act to be accidental. Each of the cases the Court relied on in *Hurst* involved a victim or third parties' free will to form consent. 400 Md. at 410–14, 929 A.2d 157 (citing *Brown v. State*, 459 N.E.2d 376, 379 (Ind.1984) (The court found that where the only contested issue is consent, evidence of prior rapes committed by the defendant was not admissible because the fact that one woman was raped does not tend to prove that another woman did not consent.); *State v. McArthur*, 719 So.2d 1037, 1041 (La.1998) (The court held, "where the only issue in a prosecution for rape is that of consent, other offenses are usually held inadmissible. The lack of consent by other victims is not probative of lack of consent by the complainant of the charged offense."); *State v. Sweeney*, 299 Mont. 111, 999 P.2d 296, 302 (2000) (The court found that evidence of other sexual assaults was improperly admitted as this evidence served only to prove the defendant's character and to show he acted in conformity with that character.); *Com. v. Minor*, 267 Va. 166, 591 S.E.2d 61, 67 (2004) (The court precluded other crimes evidence, holding: "[I]n our view, evidence showing that a defendant raped one or more individuals other than the victim in the crime charged is generally not relevant to the question whether that victim did or did not consent to sexual intercourse with the defendant. This is so because 'the fact that one woman was raped ... has no tendency to prove that another woman did not consent.' "); *State v. Alsteen*, 108 Wis.2d 723, 324 N.W.2d 426,

---

**13.** Additionally, Maryland Rule 5-404(b) provides that: "Evidence of other crimes, wrongs, or acts including acts as defined by Code, Courts Article, § 3-801 is not admissible to prove the character of a person in order to show action in conformity therewith. **Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.**" (emphasis added). Although the list is not exhaustive, consent is not listed as an exception within Maryland Rule 5-404.

429–30 (1982) (The court held that evidence of prior sexual crimes is inadmissible to prove that a subsequent complainant did not consent to sexual relations.)). None of the cases relied on by the Court in *Hurst* involved other crimes evidence being admitted to prove absence of mistake or accident. Although *Hurst* postdates *Wynn, Hurst* is not controlling as to the absence of mistake exception under Maryland Rule 5–404(b), and does not encroach upon the standards set forth by the Court in *Wynn.*

We note that, in his Reply Brief, appellant argues that mistake was not raised as a defense at trial, and that assuming *arguendo,* appellant asserted mistake as a defense, mistake is not a legal defense to the crime of unnatural or perverted sexual practices, rendering the other crimes evidence irrelevant. Additionally, appellant complains that the range of other crimes admitted into evidence, at trial, exceeded the "absence of mistake" exception.

Contrary to appellant's contentions, the record, to be sure, reflects appellant asserted accident and mistake as a defense. To begin with, upon apprehension, as mentioned above, appellant advised Detective Austin that the defecation was an accident. Admittedly, during the hearing on the motion *in limine,* before the empanelling of the jury, appellant argued that there is no relevance insofar as the "absence of mistake" exception is concerned because mistake is not a defense to unnatural or perverted sexual practices. Although during the motion *in limine* appellant argued that unnatural or perverted sexual practices is a strict liability offense, for which there is no mistake defense to the crime, during closing argument, before the jury, appellant's counsel took a different tact arguing:

> [DEFENSE COUNSEL]: We talked to Detective Swanson and—or Miss Swanson and on that portion—the State is correct in that you are only to consider her testimony for one thing and one thing alone. Was there defecation and was that mistake?

Additionally, at trial, it is undisputed that appellant testified that whatever the victim said as to the defecation was "whatever it was," but that he did not defecate for sexual gratification or enjoyment, giving rise to the inference that the defecation occurred by accident or mistake. As such, the record reflects that, pretrial in a statement to Detective Austin, at trial, in testimony, and in closing argument, appellant raised the defense of mistake or accident.

As to whether mistake or accident may be a defense to the crime of unnatural or perverted sexual practices, in *Herd v. State,* 125 Md.App. 77, 90–91, 724 A.2d 693 (1999), when discussing *mens rea,* we wrote:

> That, of course, does not end the inquiry. A simple black-or-white classification of the *mens rea* as one involving a specific intent or one involving only a general intent is but a part of the necessary examination. An involuntary act—a muscular spasm or a fall, for example—would not render one guilty even of a crime *malum prohibitum* let alone a crime *malum in se.* Even a crime *malum prohibitum* requires a voluntary act. *Mens rea* literally means "a guilty mind." With respect to crimes *mala in se,* to wit, to crimes involving a *mens rea,* even general intent may mean more than merely voluntarily doing the act that constitutes the *actus reus.*

In *Garnett v. State* 332 Md. 571, 580, 632 A.2d 797 (1993), the Court of Appeals stated that:

> Conscious of the disfavor in which strict criminal liability resides, the Model Penal Code states generally as a minimum requirement of culpability that a person is not guilty of a criminal offense unless he acts purposely, knowingly, recklessly, or negligently, *i.e.,* with some degree of *mens rea.* Model Penal Code § 2.02 (Official Draft and Revised Comments 1980). The Code allows generally for a defense of ignorance or mistake of fact negating *mens rea. Id.* at § 2.04. The Model Penal Code generally recognizes strict liability for offenses deemed "violations," defined as wrongs subject only to a fine, forfeiture, or other civil penalty upon

conviction, and not giving rise to any legal disability. *Id.* at §§ 1.04, 2.05.

 While appellant argues that accident or mistake is not a defense to the crime of unnatural or perverted sexual practices, case law in Maryland reflects a recognition that a person must act voluntarily to be guilty of a crime *malum prohibitum.* Thus, other crimes evidence, under the Maryland Rule 5–404(b) absence of mistake exception, is admissible in the prosecution of an unnatural or perverted sexual practices offense, where the defendant alleges having committed the act or offense by mistake or accident. In this case, given that appellant did not concede before the jury that the offense of unnatural or perverted sexual practices is a crime of strict liability requiring no *mens rea,* the status of the law with respect to the permission of an accident or mistake defense generally, and the requirement that even a crime *malum prohibitum* be committed voluntarily, the circuit court did not err in the admission of the other crimes evidence under the accident or absence of mistake exception to Maryland Rule 5–404(b).

 To the extent that appellant maintains the range of other crimes evidence admitted, at trial, exceeded the act of defecation—because Swanson was permitted to testify about her advertisement on Craigslist, appellant's alleged demand for unprotected sex, that appellant had a gun and money was exchanged—we conclude that counsel for appellant failed to preserve this issue for appeal. Although defense counsel litigated a motion *in limine* regarding the admission of the defecation incident as to Swanson, during the hearing on the motion *in limine,* counsel did not object to the scope of Swanson's testimony. When Swanson was called to testify at trial and recounted the details of her experience with appellant, there was no objection to her testimony regarding those details. It was clear during the motion *in limine* proceeding that the State intended to introduce the details of Swanson's encounter. During the hearing on the motion *in limine,* the State advised:

[PROSECUTOR]: The evidence that we intend to show by the February act up in Prince George's County is that he committed the same act, [sic] okay, by force.

\* \* \*

[PROSECUTOR]: The evidence that we intend to show from Ms. Swanson and her testimony would go to show that what he did in Charles County in April was absolutely no mistake. That's what he does. That's what he does and that's what he did in February and that's what he did in April.

\* \* \*

[PROSECUTOR]: Clear and convincing evidence, I can make a further proffer if Your Honor wants to, that's how you indicated that you wish to proceed.

THE COURT: If that's acceptable.

[PROSECUTOR]: Right. . . . Okay. About what—Ms. Swanson's testimony is going to be and the Court could— could find that—by clear and convincing evidence she's going to testify to the statement that she made and she made it to—I think it was Officer Howard of Prince George's County Police I think.

In the Application for Statement of Charges completed by Detective Austin on May 1, 2009, and contained in the court file of the Prince George's County Circuit Court, Detective Austin wrote that he had been provided with information from a Prince George's County Police Department Detective, Ann Nicodemus, of a sexual assault involving another victim who had posted on Craigslist, and there were similarities in "the description of the weapon used and the method of operation by the suspect as described by both victims." Detective Austin wrote that the suspect defecated in the Prince George's County victim's mouth and forced her to consume his feces at gunpoint. These details were available to appellant and his counsel, as well as the State's proffer at the hearing on the motion *in limine* as to what Swanson's testimony would be, yet no objection was made during the hearing on the motion *in limine* as to the scope of Swanson's testimony.

At the hearing on the motion *in limine*, appellant initially made a two-fold argument, first, that introduction of the other crimes evidence would prevent him from testifying on his own behalf, due to appellant's Fifth Amendment privilege against self incrimination in the Prince George's county case; and secondly, that since identification was not an issue in this case, the other crimes evidence was not admissible under a signature crime or identity exception theory. Upon being informed by the prosecutor that the State sought to introduce the other crimes evidence under Maryland Rule 404(b) absence of mistake exception, appellant argued that the unnatural or perverted sexual practices offense is a strict liability offense, and mistake is not a defense. While defense counsel sought to exclude Swanson's testimony, there was no objection as to the scope of Swanson's testimony.

When Swanson was called as a witness at trial, counsel stated, "[j]ust again to note my objection for the record." Swanson testified, without objection, that she encountered appellant through Craigslist,[14] appellant requested oral sex without a condom,[15] he produced a gun,[16] and that

---

**14.** For example, as to Craigslist, the following occurred at trial:

[PROSECUTOR]: Ms. Swanson, how is it—the Defendant ended up coming to your apartment?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overrule.
[SWANSON]: Well, it started by—a phone conversation and we had set up a date for him to come into my apartment and that's where it started.
[PROSECUTOR]: Right. Well, let me ask you this. Let's be—just plain about this. This—what kind of a date?
[SWANSON]: A Craigslist. I was on Craigslist.

**15.** As to the request for unprotected sex, Swanson testified at trial:

[SWANSON]: ... And then from there he sat on the couch and he wanted me to give him oral without a condom and I didn't want to do that. So he kind of got mad and frustrated about that and I said well you gotta go and I-then took the money and hid it and he all of sudden was asking about his phone and I was like I don't know where you phone's at. . . .

**16.** As to the gun, Swanson testified at trial:

money had been exchanged.[17] We conclude appellant has not preserved an objection to the testimony complained of, as the scope of Swanson's testimony was not the subject of appellant's motion *in limine,* and appellant made no objection, at trial, to this testimony.[18]

Alternatively, assuming, *arguendo,* the objection to the scope of Swanson's testimony was preserved for appeal, we conclude that this testimony was reasonably necessary to describe the other crimes evidence. Under Maryland Rule 404(b), evidence can be admitted to the extent necessary to describe the crime. *See Faulkner,* 314 Md. at 642–43, 552 A.2d 896 ("This corroborative evidence, including the 'other crimes' evidence, is not merely cumulative in establishing Faulkner's guilt. It was reasonably necessary and served an

---

[SWANSON]: And then he reached in his hoodie when he was putting his clothes on acting like he was leaving and pulled out a gun; the silver gun.

17. As to the money, the following exchange occurred at trial:
 [PROSECUTOR]: Okay. And after he pulls this gun out what happens at that point?
 [SWANSON]: He told me to get back [sic] his money and counted it to make sure all his money that he had was there. So I counted his money and I said here, I said please don't hurt me. I said I have a child. I said don't shoot me. I said I'll do anything you need me to do.

18. A general objection to an evidentiary issue preserves all grounds of appeal on that objection. *Anderson v. Litzenberg,* 115 Md.App. 549, 569, 694 A.2d 150 (1997) ("Generally, Maryland litigants are not required to state the specific ground for an objection unless requested to do so by the trial court. Consequently, if a court overrules an objection, all grounds for the objection may be raised on appeal.") (citations omitted). An objection for the record, however, after the trial court denies a motion *in limine* will only preserve those arguments made in the motion *in limine. Conyers v. State,* 354 Md. 132, 149, 729 A.2d 910 (1999) (citing *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107 (1994)) (quoting *Clayman v. Prince George's Co.,* 266 Md. 409, 416, 292 A.2d 689 (1972)) ("The interests of fairness are furthered by 'requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.' "). Therefore, counsel's failure to argue during the motion *in limine* that the scope of Swanson's testimony should be limited, constitutes a waiver of this issue on appeal.

appropriate probative purpose. In other words, it did more than suggest to the jury that Faulkner was a bad man or had a propensity to commit crimes."); *Cross*, 282 Md. at 474, 386 A.2d 757 ("In some cases, [the weighing of the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission] may require that evidence of the criminal actions of the defendant be totally excluded; in others, admission of portions or all of the evidence of the defendant's specific criminal actions may be permissible.").

Appellant relies on *Streater v. State*, 352 Md. 800, 724 A.2d 111 (1999), in an attempt to limit the scope of the other crimes evidence. *Streater*, however, is not dispositive. In *Streater*, the Court of Appeals addressed the scope of evidence admitted as other crimes evidence. In *Streater*, the Court held that a protective order admitted into evidence containing three factual determinations [19] made by a district court judge, which constituted the basis upon which Streater had been ordered not to contact the victim, was improperly admitted as other crimes evidence. 352 Md. at 802, 724 A.2d 111. The Court found that the trial court failed to properly analyze three separate instances of other crimes evidence contained in the protective order. *Id.* at 814, 724 A.2d 111. The Court found that:

> [T]he factual determinations regarding the other crimes contained within the protective order each must be analyzed separately from the question of the admissibility of the

---

**19.** "The protective order admitted into evidence contained three factual determinations that constitute evidence of other crimes. They include[:] (1) Mr. Streater placed Ms. Streater 'in fear of imminent serious bodily harm' and that he 'threatened to harm' her; (2) Mr. Streater 'broke into the house and took her money'; and (3) Mr. Streater committed a 'battery or assault and battery.' " *Id.* at 815, 724 A.2d 111. The protective order was admitted into evidence without the factual findings having been assessed, separately, for admissibility under Maryland Rule 404(b). *Id.* at 823, 724 A.2d 111. The Court of Appeals remanded the case for the trial court to consider whether each prior act contained in the protective order met the test for admissibility. *Id.*

protective order itself. The trial court must therefore apply the three-prong test outlined above to determine (1) whether the evidence of other crimes carries any substantial relevance to contested issues in the case, (2) whether the other crimes have been established by sufficient evidence, and (3) whether admission of the contents had probative value outweighing the prejudice resulting from admission.

*Id.* at 814–15, 724 A.2d 111. The Court found that the trial court erred:

On the other hand, the trial court in the instant case ruled the entire protective order form admissible without addressing in the record the admissibility of factual references to other crimes that the order contained. These factual findings related to a time period not mentioned by any witnesses in the proceedings and also to acts committed by Mr. Streater that were unsubstantiated by any other testimony in the case and may have been more prejudicial than probative. In her testimony, Ms. Streater never discussed the specific events that apparently supported the factual findings contained in the protective order. The only events she testified to occurred four months *after* the protective order had been issued. Further, the record does not reveal the time frame in which the factual findings contained in the November 1995 order occurred. The only reference at trial to any violent *act* committed by Mr. Streater was the reference in the protective order to the "[b]attery or assault and battery." The State never sought to explain the battery mentioned in the order nor did it present similar evidence through Ms. Streater's or any other witness's testimony.

*Id.* at 813, 724 A.2d 111 (emphasis in original).

Unlike *Streater*, where the trial court failed to apply the three-prong *Faulkner* analysis to the other crimes evidence, in this case, the trial court properly applied the three-prong *Faulkner* analysis to the other crimes evidence admitted at trial.

It is clear that the attorneys and the trial court understood at the hearing on the motion *in limine* what Swanson would testify to, and this included the statement she made to a Prince George's County detective, and the specifics of the crime which mirrored the specifics of the crime against Stahl. The trial court heard argument from both attorneys on the three-prongs of the *Faulkner* analysis. The trial court, after hearing argument, denied defense counsel's motion *in limine* and permitted Swanson to testify at trial.

The State introduced Swanson's testimony to prove that appellant's defecation on Stahl had not been accidental or a mistake. To demonstrate the non-accidental nature of the act, it was necessary for the State to introduce evidence surrounding the act itself. *Streater*, 352 Md. at 810, 724 A.2d 111 (quoting *Faulkner*, 314 Md. at 642–43, 552 A.2d 896) ("[T]he evidence must be reasonably necessary to establish the elements of the offense charged."). That appellant contacted Swanson for sexually related activity, produced a gun, and demanded oral sex of Swanson with the results of the defecation remaining in her mouth, were details related to the non-accidental nature of the act. It would have been impossible to describe the act of defecation in a vacuum with no supporting circumstances. For all of the reasons above, we conclude that the circuit court committed no error in admitting Swanson's testimony under the accident or "absence of mistake" exception to Maryland Rule 404(b).

The next step, under the *Faulkner* three step analysis, is to determine whether appellant's involvement in the other crimes is established by clear and convincing evidence. For evidence to be admissible under Maryland Rule 5–404(b), it must be "clear and convincing to the trial judge." *Cross*, 282 Md. at 478, 386 A.2d 757. "Clear and convincing evidence means that the witness to a fact must be found to be credible, and that the facts to which [she] ha[s] testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitance, of the truth of the

precise facts in issue." *Goroum v. Rynarzewski,* 89 Md.App. 676, 684–85, 599 A.2d 843 (1991) (quoting *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170 (1980) (quoting, in turn, 30 Am. Jur.2d Evidence 1167 (1967))). We review the trial court's decision in this regard "to determine whether the evidence was sufficient to support the [trial court's] finding." *Faulkner,* 314 Md. at 635, 552 A.2d 896.

In this case, Swanson, the victim of the other crime, testified in court. The crime or conduct about which Swanson testified was not remote in time but rather occurred in February 2009, approximately two months before appellant's interaction with Stahl, which occurred on April 12, 2009, in this case. Swanson reported the incident to law enforcement authorities immediately after the occurrence, and testified at trial, in November 2009, approximately eight months after her encounter with appellant.

The similarities between the two events lead to the determination that the other crimes evidence, as testified to by Stahl, was established by clear and convincing evidence. Both Swanson and Stahl reported advertising on Craigslist and being contacted by appellant. Both women reported being held at gun point, and being defecated upon, and forced to perform oral sex. There is no evidence that the two women were in any manner previously acquainted with each other. We find no basis to disturb the trial court's determination that appellant's involvement in the other crime is established by clear and convincing evidence.

 Appellant contends that the circuit court abused its discretion in admitting Swanson's testimony because its probative value was outweighed by the danger of unfair prejudice. Maryland Rule 5–403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ To some degree, all evidence admitted under Maryland Rule 5–404(b) is prejudicial. Therefore, the third *Faulkner* prong requires the trial court to engage in a Rule 5–403 balancing. *Streater*, 352 Md. at 810, 724 A.2d 111. The Court of Appeals in *Carter v. State*, 374 Md. 693, 705, 824 A.2d 123 (2003), explained:

> With respect to issues involving the admissibility of evidence, although relevant evidence is generally admissible, *Merzbacher v. State*, 346 Md. 391, 404, 697 A.2d 432, 439 (1997), it "should be excluded by the trial court, if the probative value of such evidence is determined to be substantially outweighed by the danger of unfair prejudice." *Andrews v. State*, 372 Md. 1, 19, 811 A.2d 282, 292 (2002) (citing Maryland Rule 5–403). " '[A] decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion.' " *Merzbacher*, 346 Md. at 405, 697 A.2d at 439 (quoting *Williams v. State*, 342 Md. 724, 737, 679 A.2d 1106, 1113 (1996), *overruled on other grounds, Wengert v. State*, 364 Md. 76, 89, 771 A.2d 389, 396 (2001)).

As reiterated by Professor McLain, in her book Maryland Rules of Evidence: "Rule [5–403] instructs the court to exclude the evidence only if the probative value it would add to the case is substantially outweighed by the risk of unfair prejudice, confusion of the fact finder or, waste of time." PROFESSOR LYNN MCLAIN, MARYLAND RULES OF EVIDENCE 66 (Thomson/West ed., 2007).

In *Hyman v. State*, 158 Md.App. 618, 628, 857 A.2d 1166 (2004), we discussed the balancing necessary to weigh probative value against prejudice as follows:

> The "unfair" component of the prejudice is not the tendency of the evidence to prove the identity of the defendant as the perpetrator of the crimes. What is "unfair" is only the incremental tendency of the evidence to prove that the defendant was a "bad man." As we balance, therefore, the emphasis must be not on the noun "prejudice" but on the qualifying, and limiting, adjective "unfair."

It is the failure to appreciate this distinction that leads many analyses astray. There is frequently a tendency to conclude that if the State's case is otherwise a strong one, the probative value of "other crimes" evidence is proportionately diminished. That is not the case. Probative value does not depend on necessity. When we are talking only about the legitimate prejudice that inevitably results from competent evidence enjoying a special or heightened relevance, there is no downside to making a strong case even stronger.

The probative value must, of course, be measured against the "unfair" component of the prejudicial evidence. When that is the subject of the balancing, necessity is a factor. We balance 1) the need for the evidence against 2) the tendency of the evidence to prejudice the defendant unfairly. In terms of legitimate prejudice, on the other hand, the State is not constrained to forego relevant evidence and to risk going to the fact finder with a watered down version of its case.

*Oesby v. State,* 142 Md.App. 144, 166–67, 788 A.2d 662, *cert. denied,* 369 Md. 181, 798 A.2d 553 (2002).

In *Oesby,* 142 Md.App. at 167–68, 788 A.2d 662, this Court stated:

This final balancing between probative value and unfair prejudice is something that is entrusted to the wide discretion of the trial judge. The appellate standard of review, therefore, is the highly deferential abuse-of-discretion standard. The fact that we might have struck the balance otherwise is beside the point. We know of no case where a trial judge was ever held to have abused his discretion in this final weighing process. As a practical matter, that will almost never be held to have occurred. A properly disciplined appellate court will not reverse an exercise of discretion because it thinks the trial judge's decision was wrong. That would be substituting its judgment for that of the trial court, which is inappropriate if not forbidden. Reversal should be reserved for those rare and bizarre exercises of discretion that are, in the judgment of the appellate court,

not only wrong but flagrantly and outrageously so. In this case, we see no faint or distant glimmer of even arguable abuse.

In this case, Swanson's testimony was highly probative, as Swanson testified that less than two months prior to appellant's contact with Stahl, appellant committed the same act, defecating in Swanson's mouth, which he contended to be accidental or not done for sexual gratification with Stahl. The circuit court determined the other crimes evidence, "would be relevant to show his intent or absence of mistake or accident if that is in fact what he's—is position is going to be." The court found that the probative value of the evidence against appellant outweighed the prejudice it would cause, stating, "[a]nd when weighing that against the—I mean certainly it's prejudicial, I mean it's—but is it unduly prejudicial and—I do find that it is more probative than prejudicial."

At the conclusion of evidence in the case, the court gave the following instruction: "You have heard evidence that the defendant committed the bad act of defecating in the mouth of Rachel Swanson which is not a charge in this case. You may consider this evidence only on the question of whether the defendant's act of defecating in/on Ms. Stahl was accidental or mistake." Accordingly, the circuit court balanced the probative value of the evidence along with the danger of unfair prejudice, and gave a specific instruction to the jury explaining the purpose for admission of the other crimes evidence. We find no abuse of discretion.

## II.

At the conclusion of the case, the court gave the following instruction on reckless endangerment: "A person may not recklessly engage in conduct that creates a substantial risk of death or serious physical injury to another." Neither the State nor defense counsel objected to this instruction. As stated above, appellant was convicted of reckless endangerment and was sentenced to a consecutive five year sentence for the charge.

In this case, acknowledging a failure to object to the instruction, appellant argues the trial court's instruction to the jury, as to reckless endangerment, constituted plain error. Appellant argues that the reckless endangerment jury instruction was not the Maryland Pattern Criminal Jury Instruction, and, as such, the circuit court erred by neglecting to identify the reasonableness prong of the reckless endangerment instruction and failed to provide the jury with any guidance on the meaning of recklessness.

The State contends that appellant, by failing to object, has waived any complaint on the topic, and that the court's discretion to review unpreserved issues must be used sparingly. The State further argues that to the extent the court's instruction on reckless endangerment was not a precise recitation of the Maryland Pattern Criminal Jury Instruction, this is of no consequence, because the facts of the case, and appellant's defense did not involve the claimed omitted portions of the pattern instruction.

Maryland Rule 4–325(e) provides the following:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and grounds of objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. **An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.**

(Emphasis added).

As the Court of Appeals discussed in *State v. Brady*, 393 Md. 502, 507–08, 903 A.2d 870 (2006) (citing *State v. Hutchinson*, 287 Md. 198, 204, 411 A.2d 1035 (1980)):

Interpreting Rule 757 h, a predecessor Rule to Rule 4–325, this Court characterized the instances when an appellate court should take cognizance of unobjected to error as "compelling, extraordinary, exceptional or fundamental to

assure the defendant a fair trial," *State v. Hutchinson,* 287 Md. 198, 202, 411 A.2d 1035, 1038 (1980), and as those "which vitally affect[ ] a defendant's right to a fair and impartial trial," *State v. Daughton,* 321 Md. 206, 211, 582 A.2d 521, 523 (1990), *citing Hutchinson,* 287 Md. at 202, 411 A.2d at 1037–38, thus excluding the exercise of the discretion "as a matter of course," *id.,* and errors that are "purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Id.* at 203, 411 A.2d at 1038. This Court has further explained:

> "[T]he appellate courts of this State have often recognized error in the trial judge's instructions, even when there has been no objection, if the error was likely to unduly influence the jury and thereby deprive the defendant of a fair trial. The premise for such appellate action is that a jury is able to follow the court's instructions when articulated fairly and impartially. It follows, therefore, that when the instructions are lacking in some vital detail or convey some prejudicial or confusing message, however inadvertently, the ability of the jury to discharge its duty of returning a true verdict based on the evidence is impaired. The responsibility for avoiding such circumstance rests with the trial judge who must advise the jury on every matter stemming from the evidence which is vital to its determination of the issues before them."

(Footnote omitted).

In other words, plain error should be used in instances where the error is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson,* 287 Md. at 203, 411 A.2d 1035. The responsibility for avoiding such error rests with the trial judge. *Id.*

Appellant, in this case, agrees that no objection was made to the court's instruction on reckless endangerment. Therefore, absent plain error, any issue as to the propriety of the instruction on reckless endangerment has not been preserved for appeal.

██ Maryland Criminal Pattern Jury Instruction 4:26A, titled Reckless Endangerment, provides:

The defendant is charged with the crime of reckless endangerment. In order to convict the defendant of reckless endangerment, the State must prove:

(1) that the defendant engaged in conduct that created a substantial risk of death or serious physical injury to another;

(2) that a reasonable person would not have engaged in that conduct; and that the defendant acted recklessly.

The defendant acted recklessly if [he] [she] was aware that [his] [her] conduct created a risk of death or serious physical injury to another and then [he] [she] consciously disregarded that risk.

██ The Maryland Pattern Criminal Jury Instructions are not mandatory. In *Green v. State*, 119 Md.App. 547, 562, 705 A.2d 133 (1998), we stated, "[n]evertheless, the pattern instructions are not comparable to rules of evidence. They serve as a valuable resource tool, but they do not necessarily fit every conceivable situation. Therefore, they cannot be followed without consideration of the particular circumstances of each case."[20] This Court in *Sydnor v. State*, 133 Md.App.

---

**20.** In this case, appellant contends the conviction on reckless endangerment was grounded in accusations as to appellant's use of the gun, rather than the act of defecation. As to appellant's use of the gun, at trial, Stahl testified that, at one point, appellant placed the gun in her mouth, and Stahl confirmed that the gun entered into evidence as State's Exhibit Number 1 was the gun appellant used on April 12, 2009. Detective Nicodemus, testified that State's Exhibit 1 was a handgun recovered by the Prince George's County Police Department Evidence Technician when a search warrant was executed at appellant's residence. Officer James Ammons, who is a technician for the Charles County Sheriff's Office, Forensic Science Unit, testified that the gun was operable.

Regardless of whether the State's theory of conviction on reckless endangerment was appellant's use of the gun or his defecation in the victim's mouth, appellant's defense was not that either act was reasonable or not a reckless act. Appellant did not raise as a defense the concept that placing an operable gun into another's mouth or defecating into a person's mouth was something a reasonable person would

173, 183–84, 754 A.2d 1064 (2000) *aff'd*, 365 Md. 205, 776 A.2d 669 (2001), explained:

It is generally well recognized that a defendant is entitled to instructions on the law when generated by the evidence and not covered by instructions actually given. *Patterson v. State*, 356 Md. 677, 683, 741 A.2d 1119 (1999); *Ware v. State*, 348 Md. 19, 58, 702 A.2d 699 (1997); *see also* Md. Rule 4–325(c) (2000). Appellant asserts that the trial judges'[ ] departure from the recommended language in the pattern jury instructions resulted in the possibility that the jury rejected his claim of self-defense because it erroneously believed he had a duty to retreat. In general, we have favored implementation of the Maryland Pattern Jury Instructions:

Nevertheless, we say for the benefit of trial judges generally that the wise course of action is to give instructions in the form, where applicable, of our Maryland Pattern Jury Instructions. Those instructions have been put together by a group of distinguished judges and lawyers who almost amount to a "Who's Who" of the Maryland Bench and Bar. Many of these instructions have been passed upon by our appellate courts.

*Green v. State*, 127 Md.App. 758, 771, 736 A.2d 450 (1999).

**As the State points out, however, deviation from the recommended language in the pattern jury instructions does not *per se* constitute error.** We explained in *Green v. State*, 119 Md.App. 547, 562, 705 A.2d 133 (1998), that, "When the evidence generates an issue that is not covered by a pattern instruction, we must count on the court to incorporate relevant and valid legal principles gleaned from

---

have done or that such behavior did not create a serious risk of injury. Under the circumstances, any complaint that the circuit court failed to define recklessness or reasonableness as set forth in the Maryland Pattern Jury Instruction is of no consequence, as we are satisfied that no jury would have found beyond a reasonable doubt that the act of placing an operable gun into a person's mouth or defecating into a person's mouth was something a reasonable person would have done, or was not reckless.

the case law." The court sought "to give the jury the most accurate recitation of the law" in its modification of the pattern instruction from "at the moment that the force was used" to "at the moment the shots were fired."
(Emphasis added).

The circuit court instructed the jury that, "[a] person may not recklessly engage in conduct that creates a substantial risk of death or serious injury to another." The instruction, in this case, as given by the circuit court, is a direct and complete quote of the relevant Maryland criminal law statute under which appellant was charged for reckless endangerment, C.L. § 3–204(a)(1). C.L. § 3–204(a)(1) provides, "(a) [a] person may not recklessly: (1) engage in conduct that creates a substantial risk of death or serious physical injury to another; . . ." and is an accurate description of the offense. We find no error in the circuit court providing the statutory description of the offense.

Relying on *General v. State,* 367 Md. 475, 789 A.2d 102 (2002),[21] *Hutchinson,* 287 Md. 198, 411 A.2d 1035,[22] and *Robertson v. State,* 112 Md.App. 366, 685 A.2d 805 (1996),[23] appellant utilizes cases, not applicable, in which the circuit court mistakenly instructed the jury or gave instructions that lacked in some vital detail. In this case, the trial judge gave the jury the statutory definition of the reckless endangerment

**21.** In *General,* 367 Md. 475, 789 A.2d 102, the Court of Appeals found reversible error, holding that a jury instruction on the requisite intent necessary to support a conviction on the charged offenses does not relieve the trial court of the obligation to instruct the jury on a mistake of fact defense generated by the evidence.

**22.** In *Hutchinson,* 287 Md. 198, 411 A.2d 1035, the Court of Appeals held that a trial court's failure to advise the jury of the option of returning a not guilty verdict, even though defendant did not object at trial, was plain error material to the rights of defendant.

**23.** In *Robertson,* 112 Md.App. 366, 685 A.2d 805, we reversed the trial court's judgments and remanded the case for a new trial, holding that testimony regarding an accused's alibi that is offered by a prosecution witness in the form of statements made to him by the accused, standing alone, constitutes sufficient evidence to warrant an alibi instruction, if requested.

offense and provided no misinformation. The circuit court's instruction was not lacking in vital detail and did not convey prejudicial or confusing information. As such, the circuit court's instruction on reckless endangerment does not rise to the level of plain error: compelling, extraordinary, exceptional, or fundamental error.

**JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

